Rockingham,
No. 5561.

STATE *v.* STEPHEN A. SANTOS.

Argued December 7, 1966.
Decided January 13, 1967.

*George S. Pappagianis*, Attorney General and *Norman E. D'Amours*, Assistant Attorney General ( *Mr. D'Amours* orally ), for the State.

*Robert A. Shaines* ( by brief and orally ), for the defendant.

DUNCAN, J. The defendant was convicted as principal in a robbery committed in a Portsmouth store on December 14, 1965. See *State* v. *Derosia*, 94 N. H. 228; *State* v. *Keegan*, 106 N. H. 152. One of his chief contentions is that the evidence was insufficient to warrant a finding of guilt beyond a reasonable doubt. The evidence that he was present when the crime was committed is not questioned. The issue is whether it could be found beyond a reasonable doubt that the defendant participated in the crime.

On the day in question the defendant and a companion named White entered the grocery store of Eli Borwick, shortly before closing time at 10 P. M. The defendant, a youth of seventeen, lived nearby, was known to the storekeeper, and was generally familiar with the store. While the defendant was engaged in looking at magazines on one side of the store, and White was looking at merchandise in a case on the opposite side, a third man entered who later was identified as Henderson.

Borwick was behind a counter toward the rear of the store and some twenty feet from the door. Henderson walked up to Borwick, and with his back toward White and Santos gave Borwick to understand that he had a gun under his coat, and demanded his money. Borwick handed over approximately two hundred dollars in bills and change, and Henderson left the store. A telephone was located near the front of the store, and Borwick asked the defendant and White to call the police, but when neither did so, made the call himself. The police arrived in about ten minutes.

Thereafter the defendant and White, with a third man who had entered the store as Henderson left, went to the police station. At approximately 11:05 P. M. Santos gave a written statement in which he denied knowing or ever having seen the robber before. The statement also denied complicity in the "hold-up." Santos testified that he was at the station until 2:30 A. M., but

according to Sergeant Rogers, whom he accompanied to the station, he was there until only 12:30 or 12:45 A. M. His mother arrived before he left, and he was not arrested that night.

At the trial, there was evidence that on December 12 or 13, 1965, Henderson, accompanied by White and Santos, had made reservations for two for December 17, 1965 at a motel in Portsmouth, explaining that they were "playing in a band." There was also evidence that on December 17 the same three appeared at the motel and paid $42 for the reservation, for three days, each paying a share, and Henderson signing the register.

On May 2, 1966 Henderson pleaded guilty to the robbery, and at the trial of the defendant which commenced on May 4, 1966 he testified that he had known the defendant for "about a month," that he was "alone" in the robbery, that he "did it by myself," and that if there was anyone else in the store at the time, he did not see them. He later conceded that he, Santos, and White had gone to the motel after the robbery, paid for a double room and that they all drank liquor there. He testified that he had spent the money obtained in the robbery, and that neither White nor the defendant received any of it.

While the defendant's presence in the store may have been explainable upon other grounds, it could reasonably be found beyond a reasonable doubt that he was present during the robbery by prearrangement, and for the purpose of aiding Henderson should aid be needed. The evidence of the conduct of the parties during the robbery and thereafter was sufficient to warrant a finding of guilt, particularly in the light of the evidence of their prior association at about the time of the robbery, and of the defendant's denial of any acquaintance with Henderson. *State* v. *Amero*, 106 N. H. 134; *State* v. *De Falco*, 8 N. J. Super. 295, *cert. den.* 5 N. J. 483.

The defendant has argued at length that the statement given by him to the police was inadmissible in evidence because obtained in violation of his constitutional rights. In a preliminary hearing before the Court without the jury, the defendant testified that he went to the police station voluntarily, and not because he had to, and that he was told by the officer that he was there as a witness and not because the officer thought he was involved in the crime. He testified that he was not told that he was a suspect, but that the officer did tell him that he didn't have to make a statement. He also testified that another officer urged him "to tell him who

did it" and "it would be easier for me if I told." Officer Rogers testified that he told the defendant that he "didn't have to make a statement if he didn't wish to, that he was allowed to use the phone or have counsel." It could be found that up to the time the statement was given, Rogers regarded Santos as a witness rather than a suspect, but that when the statement was written he "felt . . . there was more investigation to be had," and first became suspicious when Santos told him that the robber had had his back to them.

The statement, which was in Santos' handwriting, was prefaced by several lines in mimeographed form, which the defendant testified he had read before writing his statement below it: "I have been advised of my rights to obtain legal counsel prior to making this statement. No threats or promises of reward have been made to me, and I have been advised that anything that I say or write can be used in a court of law as evidence, and that I do not have to testify against myself." The Trial Court found that the statement was voluntary (*Jackson* v. *Denno*, 378 U. S. 368), and that the defendant was adequately warned of his rights and given adequate opportunity to obtain counsel. *State* v. *Reed*, 106 N. H. 140.

In these circumstances the statement was properly received in evidence. If the recent decision of the United States Supreme Court in *Miranda* v. *Arizona*, 384 U. S. 436 (June 13, 1966) had preceded the trial of this case, the Trial Court might well have excluded the evidence, since in *Miranda* it was held that specified warnings must be given prior to "any questioning," in order that statements "whether exculpatory or inculpatory, stemming from custodial interrogation" may be used at a trial. But the requisites of *Miranda* are not retroactive. *Johnson* v. *New Jersey*, 384 U. S. 719, 734.

The issue presented by the defendant's argument is whether the Trial Court erred in ruling that the defendant's statement was voluntary, and not inadmissible under *Escobedo* v. *Illinois*, 378 U. S. 478, a decision which did precede this trial. *Escobedo*, following the lead of such earlier decisions as *Gideon* v. *Wainwright*, 372 U. S. 335 and *Massiah* v. *United States*, 377 U. S. 201, held that pre-indictment statements elicited by police may not be used if made when "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police

custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent." *Escobedo* v. *Illinois, supra,* 490-491; *Johnson* v. *New Jersey, supra,* 734.

Thorough examination of the record in the case before us shows that the *Escobedo* rule did not operate to make the statement inadmissible. The defendant argues that warning was not given as soon as Officer Rogers began to suspect him of complicity in the crime, but the record does not support the argument. The investigation had not progressed from the investigatory to the accusatory stage at the time when the statement was given. *Escobedo* v. *Illinois, supra,* 492. It is plain that the defendant was not denied the opportunity to consult counsel. The questioning was not pursued without warning of his right to remain silent or for any extended period in a coercive atmosphere. The circumstances bearing upon the voluntariness of the defendant's statement, warranted the ruling of the Trial Court that it was voluntary and admissible in evidence. *Davis* v. *North Carolina,* 384 U. S. 737, 740-741, 752. The rule of *Escobedo* v. *Illinois, supra,* did not require its exclusion. *Johnson* v. *New Jersey,* 384 U. S. 719, *supra; People* v. *Hartgraves,* 31 Ill. 2d 375, 379-381; *Browne* v. *State,* 24 Wis. 2d 491, 511f.

*Exceptions overruled.*

BLANDIN, J., sat at argument but took no part in the decision; the others concurred.