Mr. Justice Stewart
delivered the opinion of the Court.
The petitioner was indicted for violating the federal narcotics laws. He retained a lawyer, pleaded not guilty, and was released on bail. While he was free on bail a federal agent succeeded by surreptitious means in listening to incriminating statements made by him. Evidence of these statements was introduced against the petitioner at his trial over his objection. He was convicted, and the Court of Appeals affirmed.[1] We granted certiorari to *334 consider whether, under the circumstances here presented, the prosecution’s use at the trial of evidence of the petitioner’s own incriminating statements deprived him of any right secured to him under the Federal Constitution. 374 U. S. 805.
The petitioner, a merchant seaman, was in 1958 a member of the crew of the S. S. Santa Maria. In April of that year federal customs officials in New York received information that he was going to transport a quantity of narcotics aboard that ship from South America to the United States. As a result of this and other information, the agents searched the Santa Maria upon its arrival in New York and found in the afterpeak of the vessel five packages containing about three and a half pounds of cocaine. They also learned of circumstances, not here relevant, tending to connect the petitioner with the cocaine. He was arrested, promptly arraigned, and subsequently indicted for possession of narcotics aboard a United States vessel.[2] In July a superseding indictment was returned, charging the petitioner and a man named Colson with the same substantive offense, and in separate counts charging the petitioner, Colson, and others with having conspired to possess narcotics aboard a United States vessel, and to import, conceal, and facilitate the sale of narcotics.[3] The petitioner, who had retained a lawyer, pleaded not guilty and was released on bail, along with Colson.
A few days later, and quite without the petitioner’s knowledge, Colson decided to cooperate with the government agents in their continuing investigation of the narcotics activities in which the petitioner, Colson, and others had allegedly been engaged. Colson permitted an agent named Murphy to install a Schmidt radio trans *335 mitter under the front seat of Colson’s automobile, by means of which Murphy, equipped with an appropriate receiving device, could overhear from some distance away conversations carried on in Colson’s car.
On the evening of November 19, 1959, Colson and the petitioner held a lengthy conversation while sitting in Colson’s automobile, parked on a New York street. By prearrangement with Colson, and totally unbeknown to the petitioner, the agent Murphy sat in a car parked out of sight down the street and listened over the radio to the entire conversation. The petitioner made several incriminating statements during the course of this conversation. At the petitioner’s trial these incriminating statements were brought before the jury through Murphy’s testimony, despite the insistent objection of defense counsel. The jury convicted the petitioner of several related narcotics offenses, and the convictions were affirmed by the Court of Appeals.[4]
The petitioner argues that it was an error of constitutional dimensions to permit the agent Murphy at the trial to testify to the petitioner’s incriminating statements which Murphy had overheard under the circumstances disclosed by this record. This argument is based upon two distinct and independent grounds. First, we are told that Murphy’s use of the radio equipment violated the petitioner’s rights under the Fourth Amendment, and, consequently, that all evidence which Murphy thereby obtained was, under the rule of Weeks v. United States, 232 U. S. 383, inadmissible against the petitioner at the trial. Secondly, it is said that the petitioner’s *336 Fifth and Sixth Amendment rights were violated by the use in evidence against him of incriminating statements which government agents had deliberately elicited from him after he had been indicted and in the absence of his retained counsel. Because of the way we dispose of the case, we do not reach the Fourth Amendment issue.
In Spano v. New York, 360 U. S. 315, this Court reversed a state criminal conviction because a confession had been wrongly admitted into evidence against the defendant at his trial. In that case the defendant had already been indicted for first-degree murder at the time he confessed. The Court held that the defendant’s conviction could not stand under the Fourteenth Amendment. While the Court’s opinion relied upon the totality of the circumstances under which the confession had been obtained, four concurring Justices pointed out that the Constitution required reversal of the conviction upon the sole and specific ground that the confession had been deliberately elicited by the police after the defendant had been indicted, and therefore at a time when he was clearly entitled to a lawyer’s help. It was pointed out that under our system of justice the most elemental concepts of due process of law contemplate that an indictment be followed by a trial, “in an orderly courtroom, presided over by a judge, open to the public, and protected by all the procedural safeguards of the law.” 360 U. S., at 327 (Stewart, J., concurring). It was said that a Constitution which guarantees a defendant the aid of counsel at such a trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less, it was said, might deny a defendant “effective representation by counsel at the only stage when legal aid and advice would help him.” 360 U. S., at 326 (Douglas, J., concurring).
Ever since this Court’s decision in the Spano case, the New York courts have unequivocally followed this con *337 stitutional rule. “Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence' of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.” People v. Waterman, 9 N. Y. 2d 561, 565, 175 N. E. 2d 445, 448.[5]
This view no more than reflects a constitutional principle established as long ago as Powell v. Alabama, 287 U. S. 45, where the Court noted that “. . . during perhaps the most critical period of the proceedings . . . that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation [are] vitally important, the defendants . . . [are] as much entitled to such aid [of counsel] during that period as at the trial itself.” Id., at 57. And since the Spano decision the same basic constitutional principle has been broadly reaffirmed by this Court. Hamilton v. Alabama, 368 U. S. 52; White v. Maryland, 373 U. S. 59. See Gideon v. Wainwright, 372 U. S. 335.
Here we deal not with a state court conviction, but with a federal case, where the specific guarantee of the Sixth Amendment directly applies.[6] Johnson v. Zerbst, 304 *338 U. S. 458. We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. It is true that in the Spano case the defendant was interrogated in a police station, while here the damaging testimony was elicited from the defendant without his knowledge while he was free on bail. But, as Judge Hays pointed out in his dissent in the Court of Appeals, “if such a rule is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse. In this case, Massiah was more seriously imposed upon . . . because he did not even know that he was under interrogation by a government agent.” 307 F. 2d, at 72-73.
The Solicitor General, in his brief and oral argument, has strenuously contended that the federal law enforcement agents had the right, if not indeed the duty, to continue their investigation of the petitioner and his alleged criminal associates even though the petitioner had been indicted. He points out that the Government was continuing its investigation in order to uncover not only the source of narcotics found on the S. S. Santa Maria, but also their intended buyer. He says that the quantity of narcotics involved was such as to suggest that the petitioner was part of a large and well-organized ring, and indeed that the continuing investigation confirmed this suspicion, since it resulted in criminal charges against many defendants. Under these circumstances the Solicitor General concludes that the government agents were completely “justified in making use of Colson's cooperation by having Colson continue his normal associations and by surveilling them.”
We may accept and, at least for present purposes, completely approve all that this argument implies, Fourth *339 Amendment problems to one side. We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted. All that we hold is that the defendant’s own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against him at his trial.

Reversed.

 307 F. 2d 62.

 21 U. S. C. 184a.

 21 U. S. C. 173, 174.

 The petitioner’s trial was upon a second superseding indictment which had been returned on March 3, 1961, and which included additional counts against him and other defendants. The Court of Appeals reversed his conviction upon a conspiracy count, one judge dissenting, but affirmed his convictions upon three substantive counts, one judge dissenting. 307 F. 2d 62.

 See also People v. Davis, 13 N. Y. 2d 690, 191 N. E. 2d 674, 241 N. Y. S. 2d 172 (1963); People v. Rodriguez, 11 N. Y. 2d 279, 183 N. E. 2d 651, 229 N. Y. S. 2d 353 (1962); People v. Meyer, 11 N. Y. 2d 162, 182 N. E. 2d 103, 227 N. Y. S. 2d 427 (1962); People v. Di Biasi, 7 N. Y. 2d 544, 166 N. E. 2d 825, 200 N. Y. S. 2d 21 (1960); People v. Swanson, 18 App. Div. 2d 832, 237 N. Y. S. 2d 400 (2d Dept. 1963); People v. Price, 18 App. Div. 2d 739, 235 N. Y. S. 2d 390 (3d Dept. 1962); People v. Wallace, 17 App. Div. 2d 981, 234 N. Y. S. 2d 579 (2d Dept. 1962); People v. Karmel, 17 App. Div. 2d 659, 230 N. Y. S. 2d 413 (2d Dept. 1962); People v. Robinson, 16 App. Div. 2d 184, 224 N. Y. S. 2d 705 (4th Dept. 1962).

 “In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.”