**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Joseph PAVON,**
**Defendant-Appellant.**

**No. 77–1737.**

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1977.

As Amended on Denial of Rehearing
Nov. 8, 1977.

---

Paul G. Gillingham, Seattle, Wash., argued for defendant-appellant.

David E. Wilson, Asst. U. S. Atty., Seattle, Wash., argued for plaintiff-appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and SKOPIL,* District Judge.

DUNIWAY, Circuit Judge:

Pavon was convicted of conspiracy to distribute and of aiding and abetting in the distribution of cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). He appeals from that judgment. We affirm.

The sole issue is whether the appearance of Pavon's probation officer as a prosecution witness was reversible error, when alternative methods were available for establishing the substance of his testimony.

## I.

Tucker, Pavon's probation officer, testified before the jury as follows:

Q. Mr. Tucker, what is your occupation?

A. United States probation officer.

Q. Do you know the defendant, Robert Joseph Pavon?

A. Yes.

Q. The man you know as Robert Joseph Pavon, is he in the courtroom today?

A. Yes, he is right behind you.

Q. Did Mr. Pavon report to you what his occupation was in March of 1975?

A. He reported that he was a salesman for a booking agency.

Q. And did he tell you where that booking agency was located?

A. It was on Roosevelt Way Northeast, I believe, 5220.

Q. And where would that address be in relation to O'Banion's Tavern?

A. As I recall, it is right behind O'Banion's.

Q. Through your association with Mr. Pavon, did he tell you how much money he was earning legitimately through that business in March and April of 1975?

A. He was reporting approximately $300 per month.

\* \* \* \* \* \*

Q. That would be total income for that period of time?

A. That is the way it was reported, as gross income.

MR. MEYERSON: I have nothing further.

MR. GILLINGHAM: I have no questions.

THE COURT: You are excused, sir.

(R.T. at 53–54)

After the noon recess which immediately followed, Pavon's attorney moved to strike Tucker's testimony on the grounds that it was not relevant and was highly prejudicial because it implied to the jury that Pavon was on probation and thus had a prior criminal record. After Pavon stipulated that he was employed at "Good Lookin' Bookin'" and that in March, 1975, he was earning $300 per month, the trial court struck Tucker's testimony and told the jury to disregard it.[1] After all the evidence had been

---

\* The Honorable Otto R. Skopil, Jr., Chief Judge of the United States District Court for the District of Oregon, sitting by designation.

[1.] The court instructed the jury as follows:
THE COURT: Ladies and gentlemen, some time during the trial, and you will be advised in the usual stock instructions, that remarks of counsel do not constitute evidence. The only evidence is that which is presented on the witness stand and the documentary exhibits which are admitted in the cause, and you are to ignore any other comments which will contradict any such documents and oral testimony, and it also says that any objection made by counsel, which was sustained, as to some statement, you are to ignore that testimony which was ordered stricken.
Sometimes it is said that it is difficult for jurors to unring a bell, so to speak, but in our system of justice it really becomes necessary that you do just exactly that if you are so advised by the court.
So, I am about to unring your bells, which means this:
The last witness who testified was Mr. Eugene Tucker, and he stated certain things. I am not going to repeat them because that puts one more cling in that bell.
I am advising you now, and I know that you will be able to do what you are required to do; one, forget that he testified, who he is

presented, defense counsel moved for a mistrial based on the prejudicial effect of the testimony despite the court's prior ruling and cautionary instruction. That motion was denied.

■ It will be noted that when Tucker took the stand and testified, there was no objection by Pavon's counsel. Thus we can hardly hold that error was committed by the court at that time. It is not error, except in most unusual circumstances, to admit evidence to which no objection is made. Also, it was not error to strike the testimony and tell the jury to disregard it. Short of granting a mistrial, there was nothing else that the judge could do. Thus the only question before us is, was it error to deny the motion for a mistrial?

## II.

■ The government argues that Tucker's testimony was not prejudicial because he did not identify himself as *Pavon's* probation officer, and did not testify that Pavon was on probation. He merely stated that his occupation was that of a United States Probation Officer. However, he also testified that Pavon "reported" his occupation, where he worked, and what salary he received. From that testimony the jury could readily infer that Pavon had a prior criminal conviction.

■ Direct evidence of a defendant's past crimes is not admissible unless (1) it is relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of motive or accident, F.R.Evid. 404(b), or (2) the defendant has placed his character in evidence by testifying, F.R.

Evid. 404(a)(1), and the probative force of the evidence outweighs any danger of unfair prejudice, F.R.Evid. 403. *See, e. g., Burg v. United States,* 9 Cir., 1969, 406 F.2d 235. In this case, none of the exceptions stated in Rule 404(b) apply, and Pavon did not place his character in issue in any way.

■ If direct evidence of Pavon's prior conviction could not have been introduced, then evidence pointing strongly to an inference to the same effect should also be excluded. Thus, testimony that Pavon was on probation would not be admissible. *Smith v. Rhay,* 9 Cir., 1969, 419 F.2d 160, 164. *See also, United States v. Calhoun,* 6 Cir., 1976, 544 F.2d 291, 296.

In *United States v. Butcher,* 9 Cir., 1977, 557 F.2d 666 at 670, we recently stated "that use of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution." Although that case dealt with identification by (among others) a parole officer, the underlying principle applies in this case. Here it would seem that the prosecution could have presented the same evidence without calling the parole officer as a witness.[2] Indeed, Pavon was even willing to stipulate, and did stipulate to the substance of the officer's testimony.[3]

■ We think that, in any criminal case in which the government proposes to put a defendant's probation or parole officer on the stand, the government should, as soon as it knows that it intends to call the witness, so advise the court and defense coun-

or what he said, just as though he never appeared in the court.

Is there any one amongst you ladies and gentlemen who cannot do that?

(No affirmative response by jurors.)

(R.T. at 57–8)

2. Pavon's employer, for example, could have been called to establish where Pavon worked and what his salary was in March of 1975, or at least it was not shown that such testimony was unavailable.

3. At oral argument, the government suggested that Pavon had waived any right to challenge

the appearance of the probation officer by failing to inform the court of his objections before the officer took the stand. Defense counsel argued that Tucker was a "surprise witness," that he did not know that Tucker was to be called, and that he had never been informed that Tucker had been his client's probation officer. The record is not clear as to whether Tucker was a surprise witness. It seems probable that he was not. But because the record is not clear, we do not rest our decision on a waiver theory.

sel. The court should then, if asked to do so, permit the defense to object in the absence of the jury. In this way it may be possible to handle the testimony in such a manner that the jury will not know that the witness is a probation or parole officer, or to arrange for similar testimony by another witness, or to substitute a stipulation as in this case. If the value of the testimony does not outweigh its probable prejudicial effect, and if there is no other way for the government to present it, the court can exclude it entirely. Prosecutors who fail to heed these suggestions will run a serious risk of reversal.

### III.

 The remaining question is was the error, if it was error, harmless? We conclude that it was.

The court, upon defendant's motion, strongly instructed the jury to disregard the testimony of Tucker. (Note 1, *supra*) When the court strikes testimony and gives such an instruction, there is a strong presumption that the jury has followed the court's instruction. *See, e. g., Robison v. United States,* 9 Cir., 1967, 379 F.2d 338, 345. When, at the conclusion of the trial, Pavon moved for a new trial on the ground that Tucker's testimony was unduly prejudicial, the judge denied the motion, saying:

> He [Tucker] described his work as a United States probation officer. He did not say that he received that information in that capacity. When you add that fact to my admonition to the jury, there is no question but what they can wipe it from their minds.

The judge's estimate of the probability of undue prejudice is entitled to great weight.

Moreover, we are not persuaded by Pavon's argument that the case was a close one. On the contrary, two witnesses, unindicted co-conspirators, in their testimony before the grand jury, directly and positively identified Pavon as the supplier of the cocaine that one of them sold to a government agent. Their testimony was corroborated by considerable circumstantial evidence that pointed to a "Bob," who worked at Good Lookin' Bookin', as the supplier.

At the trial, the two co-conspirators were very reluctant witnesses. One was admittedly afraid; the other was a girl friend of Pavon, and also afraid. They partially repudiated their testimony before the grand jury, and the woman also repudiated a written statement, taken down by interviewing agents and corrected and signed by her. However, on cross-examination, and when confronted with their prior testimony, and in the case of the woman her statement, each admitted that his or her testimony before the grand jury was truthful. Given these facts, the evidence against Pavon, far from being weak, as counsel argues, was very strong. It took the jury a very short time to convict. Under these circumstances, we must conclude that the error in receiving Tucker's testimony, if error it was in this case, was harmless.

Affirmed.