UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Edward KILRAIN, a/k/a Duffy, Jo Ann Davis, Richard Otho Piper, and Jack Kilrain, a/k/a Jack Hickey and John Hickey, Defendants-Appellants.

No. 76–3947.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1978.

Rehearing and Rehearing En Banc Denied Feb. 24, 1978.

Ray Sandstrom, Fort Lauderdale, Fla., for defendants-appellants.

William L. Harper, U. S. Atty., Robert H. McKnight, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before AINSWORTH, SIMPSON and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendants Joseph Edward Kilrain, Jack Kilrain, Jo Ann Davis and Richard Otho Piper were convicted of conspiracy to possess and distribute marijuana in violation of 21 U.S.C. § 846. All the defendants, except Jack Kilrain, were also convicted of possession with intent to distribute under 21 U.S.C. § 841. Defendants seek reversal on the basis that their Sixth Amendment right to effective assistance of counsel was impermissibly compromised when federal undercover agents and an informant met with defendant Joseph Kilrain (hereinafter Kilrain) after he had been indicted. Kilrain, the informant and the agents discussed, among other things, the approaching trial

of this case. A Sixth Amendment violation is also claimed on the ground that the government informant had been indicted with the defendants, and stood trial with them for four days before pleading guilty and becoming a government witness. Defendants also contest the validity of the search warrant, arguing that the affidavits supporting the warrant contained incorrect statements. Third, defendant Davis urges that the evidence was insufficient to support her convictions. The fourth contention concerns an alleged failure to comply with the district court's Speedy Trial Plan. Finally, defendants claim that certain deficiencies in the Bill of Particulars, in supplying materials in compliance with the Jencks Act, and in limiting cross-examination of a crucial government witness mandate reversal. We affirm.

William J. Barber, his wife and his son were indicted along with the defendants. Soon after the indictment Barber volunteered to become a paid informant for the Drug Enforcement Administration (DEA). Nothing was said to Barber regarding informing on the defendants in this case. After Barber became an informant, defendant Kilrain telephoned him concerning the purchase of additional narcotics. Barber and Kilrain had several meetings at which DEA undercover agents were also present. At these meetings Kilrain, Barber and the agents discussed future drug transactions, Kilrain's desire to have the member of the conspiracy who had informed the DEA killed, and the forthcoming trial of Barber and Kilrain. Soon after these meetings Barber ceased to be an informant. Barber unsuccessfully negotiated with the prosecution for a plea bargain before trial. Two days after the trial began, and after the fact that he had been an informant had been disclosed, Barber decided to plead guilty. The charges against his wife and son were then dismissed. Barber testified at trial but did not relate any of the conversations at the meetings with Kilrain when Barber was a paid informant.[1]

1. Barber did reveal some of the substance of the conversations during the bail revocation hearing. Barber had heard Kilrain threaten the life of an informant, and express the possibility

Defendants contend that the conversations between Kilrain, Barber and the undercover agents regarding the impending trial without the presence of Kilrain's attorney violated the Sixth Amendment. Reliance is placed on the Supreme Court's decisions in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), where the Court held that post-indictment interrogation of a defendant without the presence of counsel was unconstitutional. The second point of defendants' analysis concerns the presence of Barber amongst the defendants and their counsel during the first two days of trial. Defendants insist that they suffered a deprivation of the Sixth Amendment right to the effective assistance of counsel on account of Barber being privy to the defense strategy and his subsequent cooperation with the prosecution.

■ In *Massiah* and *Brewer* the Supreme Court established an exclusionary rule for statements obtained as a result of an interrogation conducted after indictment and without the presence of defendant's counsel.[2] The present case is distinguishable from the situation in *Massiah* and *Brewer*. The agents and the informant who conversed with Kilrain did not testify at the trial as to the substance of those discussions, and defendants have not demonstrated that any of the prosecution's evidence was obtained as a result of the conversations with Kilrain. Not every interrogation in violation of the rule set forth in *Massiah* and *Brewer* mandates reversal of a conviction.[3] Unlike the cited cases, there is no evidence to exclude in the present case, and no prejudice has been shown by the defendants.

■ Defendants' other Sixth Amendment argument is equally meritless. The purported impropriety is that Barber, who had previously been a paid informant, and who subsequently pleaded guilty and testified against the defendants, was privy to defense strategy for the first two days of trial. It must be remembered that the evidence indicated that Barber had ceased operating as a government informant well before trial began. The evidence also showed that Barber had unsuccessfully negotiated with the prosecution for a plea bargain before trial. Defendants rely heavily on several cases involving a government informant who intrudes on or overhears conversations between a defendant and his counsel. *See United States v. Klein,* 5 Cir., 1977, 546 F.2d 1259, 1264 (suggesting in dicta that if defendant can prove that the codefendant was an agent provocateur, defendant would be entitled to a severance or a new trial);[4] *Coplon v. United States,* 1951, 89 U.S.App.D.C. 103, 191 F.2d 749, *cert. denied,* 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952), and *Caldwell v. United States,* 1953, 92 U.S.App.D.C. 355, 205 F.2d 879, *cert. denied,* 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955) (condemning intrusions

of flight from justice. However, this testimony is not relevant to the issue on appeal, as it was not presented in the Government's case against the defendants.

**2.** *See Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977): "the clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him."

**3.** *See United States v. Hayles,* 5 Cir., 471 F.2d 788, 793, *cert. denied,* 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 690 (1973) (assuming arguendo that tapes were introduced in evidence in violation of *Massiah*, admission was harmless beyond a reasonable doubt).

*Cf. Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 1243 n. 12, 51 L.Ed.2d 424, where the Court recognized that the proper rule was one of exclusion of tainted evidence rather than a per se standard of reversal if any constitutional violation had occurred.

**4.** The *Klein* case was decided a few days before *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), which held that in a similar situation involving an undercover codefendant, the defendant must demonstrate prejudice, or at the very least, receipt of the unconstitutionally acquired evidence by the Government. *See* note 8, *infra.* As the *Klein* court's dicta regarding the possibility of collateral attack of the conviction did not include the factor of prejudice, it must be considered a very weak precedent indeed.

on attorney-client conversations by wiretapping and secret agents).[5] This is not such a case. There is no evidence that Barber was an informant when he was a defendant during the first two days of trial. This is not an instance of knowing intrusion on the attorney-client relation by the Government, but rather an independent decision by a codefendant to change his plea to guilty.[6] In any case, defendants have not demonstrated any actual prejudice resulting from Barber's supposed knowledge of defense strategy, or that Barber communicated such knowledge to the Government.[7] The Supreme Court has recently held that when an agent posing as a defendant in order to preserve his cover meets with a defendant and his counsel and discusses the forthcoming trial, and defendant demonstrates neither prejudice nor receipt of such confidential information by the Government, there is no violation of the Sixth Amendment as applied to the states by the Fourteenth Amendment, and relief under 42 U.S.C. § 1983 is not warranted. *See Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 841–42, 845, 51 L.Ed.2d 30 (1977).[8]

The next question is whether the affidavits submitted to the magistrate supported issuance of the search warrant for the motor home in which the marijuana was found. Defendants Joseph Kilrain, Davis and Piper appeal the denial of their motion to quash the search warrant and to suppress the evidence seized during the search. Defendants claim that the search warrant was improperly issued because the reliability of the informant had not been established[9] and that the affidavits supporting the warrant contained material errors. We find neither contention meritorious.

■  The affidavit was made by a government agent in Georgia, and was based on

---

**5.** Both *Coplon* and *Caldwell* relied on statements in *Glasser v. United States,* 315 U.S. 60, 75–76, 62 S.Ct. 457, 467–68, 86 L.Ed. 680 (1942), to the effect that no prejudice need be shown once a violation of the constitutional right to effective assistance of counsel has been demonstrated. As *Glasser* involved the fundamental issue of an attorney's conflicting loyalties, it should not be taken as establishing a general rule against demanding proof of use or prejudice in an agent provocateur case. *See Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 842–43, 51 L.Ed.2d 30 (1977), where the Court seemed to reject *Caldwell* and *Coplon,* disclaiming that it had adopted the reasoning of those two cases in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The Court explained that in *Hoffa* it had merely assumed the validity of *Coplon* and *Caldwell* for the purpose of demonstrating that Hoffa's claim would not even be protected under those two cases.

**6.** Cf. *United States v. Klein,* 5 Cir., 1977, 546 F.2d 1259, 1264, where the court enumerated the factors required to justify a severance or new trial, and included knowledge on the part of the Government that the codefendant was an informant or agent provocateur.

**7.** *See Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 844, 51 L.Ed.2d 30 (1977): "[n]or do we believe that . . . prosecutors will be so prone to lie or the difficulties of proof so great that we must always assume not only that an informant communicates what he learns from an encounter with the defendant and his counsel, but also that what he communicates has the potential for detriment to the defendant or benefit to the prosecutor's case."

**8.** The Court declared that "when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial. This is a far cry from the per se rule announced by the Court of Appeals below, for under that rule trial prejudice to the defendant is deemed irrelevant." *Id.,* 97 S.Ct. at 842.
The Court went on to suggest more specific standards to determine whether prejudice has resulted from the Government's intrusion on the attorney-client relationship. The Court mentioned several factors that would give a defendant "a much stronger case": testimony as to the content of attorney-client conversations; whether prosecution evidence originated in the conversations or the conversations were in any other way used to the substantial detriment of the defendant; and even whether the Government had learned the details of a conversation about trial preparations. *Id.,* 97 S.Ct. at 843.

**9.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), established a two-pronged standard for evaluating the sufficiency of affidavits concerning the statements of informants. First, the affidavit must set forth the underlying circumstances that support the requisite high degree of suspicion. Second, the underlying circumstances indicating the reliability of the informant must be given.

information received from another government agent in Texas who in turn was given the information by a confidential informant. The affidavit stated that the informant had within the preceding thirty days provided information on at least six occasions to the government agent in Texas, and that the agent had personally verified the accuracy of such information. In addition, the affidavit stated that the informant had given a telephone number in Atlanta, and that the number had been traced and found to be located at the address where government agents discovered the motor home which the informant had described. Thus, the requirement of establishing the reliability of the informant in the affidavit was fully satisfied.

■ The errors in the affidavit are of a relatively trivial character, and despite them there was still probable cause to support issuance of the warrant. Misrepresentations in affidavits as to facts that are material to the establishment of probable cause will negate probable cause if such misrepresentations are negligent, see *United States v. Astroff,* 5 Cir., 1977, 556 F.2d 1369, 1372–74 (rehearing en banc granted, 5 Cir., 564 F.2d 199); or if the misrepresentation is deliberate on the part of the affiant, see *United States v. Thomas,* 5 Cir., 1973, 489 F.2d 664, 668–69, *cert. denied,* 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). These problems do not exist in the present case. The exact amount of marijuana in the motor home and the identity of the driver are the only two misrepresentations at stake here. Neither the exact amount of marijuana nor the name of the driver is necessary for probable cause to search a vehicle claimed to contain marijuana. There is no suggestion that there was deliberate misrepresentation.

■ Defendant Davis claims that the evidence was insufficient to support her convictions for conspiracy and for aiding and abetting. In reviewing the evidence, we must consider it in the light most favorable to the Government, see *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The evidence of conspiracy and aiding and abetting the possession of marijuana with the intent to distribute is ample in the case of defendant Davis. She was defendant Piper's paramour, and had previously knowingly received and delivered payments for marijuana transactions, in one instance marking the debt paid in a book. Telephone calls regarding marijuana purchases were made and received at Davis' home, and some were received by her. The motor home containing the marijuana was parked outside her apartment on the day it was searched. The prosecution's informer testified that Davis had a pound of marijuana in her apartment, and that the conspirators used her apartment to await the arrival of the marijuana. Under the circumstances, the jury properly could have found that Davis was part of the conspiracy along with her lover Piper, and that Davis aided and abetted Piper's possession of marijuana with the intent to distribute.

■ Immediately prior to trial, defendants moved for a discharge on the ground of denial of speedy trial. The original indictment was returned on August 12, 1975, and was superseded by a nearly identical indictment on September 18, 1975. The trial began on September 13, 1976. Trial was originally scheduled for July 1976, but the defendants requested a continuance until August 23, 1976. Defendants argue that the applicable Speedy Trial Plan of the district court required trial of the conspiracy count within one year, and the possession count within 180 days. The Government replies that the Speedy Trial Plan relied on by defendants was superseded by a new plan effective July 1, 1976, and that the trial was timely under the new plan. We need not decide which plan should apply, as defendants have not suggested that prejudice has resulted from trial approximately one year after indictment. Dismissal is not required where delay is minimal and no prejudice has resulted. *See United States v. Garcia,* 5 Cir., 1977, 553 F.2d 432; *United States v. Wyers,* 5 Cir., 1977, 546 F.2d 599, 602; *United States v. Maizumi,* 5 Cir., 1976, 526 F.2d 848, 851; *United States v. Clendening,* 5 Cir., 1976, 526 F.2d 842.

Defendants contend that the Bill of Particulars furnished by the Government did not include all of the overt acts which the prosecution introduced at trial. This was not error, as defendants are not entitled to discover all the overt acts that might be proved at trial, *see United States v. Murray,* 5 Cir., 1976, 527 F.2d 401, 411. A defendant should not use the Bill of Particulars to "obtain a detailed disclosure of the government's evidence prior to trial," *see United States v. Perez,* 5 Cir., 1973, 489 F.2d 51, 70–71, *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). Defendants have also pointed out an error in the Bill of Particulars. The Bill of Particulars stated that the conspiracy existed by March 1976. However, the Government seized the marijuana in the summer of 1975. This obvious typographical mistake cannot seriously be considered a source of reversible error.

Finally, defendants raise several minor issues which they contend mandate reversal. The rough notes of the government agents were not furnished as Jencks Act materials, nor were all the Jencks Act materials furnished the night before a witness was to testify, as the Government had promised. In addition, defendants asserted that the trial court improperly restricted questioning and closing remarks, and allowed expansive answers and leading questions. The Government's proof in this case was especially strong, as it included the seized contraband and the testimony of two participants. Thus, whatever error urged by the defendants that might have been committed by the trial court was certainly harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Defendant Jack Kilrain complains that he should not have been ordered to pay a portion of the cost of copying the transcript, as he was shown to be indigent. This contention is rebutted by Kilrain's admission to the court that he could "handle" fifty dollars a month in addition to his current debts.

AFFIRMED.