UNITED STATES of America, Plaintiff,

v.

**Robert Jay MEINSTER et al.,**
**Defendants.**

No. 79–165–Cr–JLK.

United States District Court,
S. D. Florida.

Oct. 23, 1979.

Dennis J. Cogan, Philadelphia, Pa., George A. Kokus, Miami, Fla., for Robert Jay Meinster.

Arnold C. Stream, Monasch, Chazen & Stream, New York City, for Robert Elliot Platshorn.

Melvyn Kessler, Miami, Fla., for Lynne Platshorn.

Rebekah J. Poston, Miami, Fla., for Eugene Arter Myers.

Samuel Sheres, Hallandale, Fla., for Randall Gene Fisher.

Gerald Kogan, Miami, Fla., for Modesto Echezarreta-Cruz.

Michael L. Brodsky, Miami, Fla., for Richard Elliot Grant, Jr.

Arthur W. Tifford, Miami, Fla., for Mark Stephen Phillips.

Denis Dean, Miami, Fla., for Cari Jerry London.

Bruce H. Fleisher, Coral Gables, Fla., for Ronald Benton Elliot.

### ORDER DENYING EVIDENTIARY HEARING ON PROSECUTORIAL MISCONDUCT

JAMES LAWRENCE KING, District Judge.

This matter arose upon the motion of defendants Meinster and Robert Platshorn for an emergency evidentiary hearing to determine prosecutorial misconduct. The government opposes the defendants' motion, denying the occurrence of any such misconduct. Neither the defendants' motion nor the government's response cites any relevant case law. Apparently, the basis for the defendants' motion is their contention that (1) conversations among Harry Brown (a government informant) and the two defendants, and (2) conversations among Drew Gordon (an alleged government informant), the defendants, and Ar-

nold Stream (Platshorn's attorney) violated the defendants' right to effective assistance of counsel in conducting their defense.

Defendants request that they be granted a separate evidentiary hearing on their allegations. There is, however, no need for a further hearing on these matters. Defense counsel have already had more than an ample opportunity to investigate the circumstances of Brown's meetings with Meinster and Platshorn in the extensive suppression hearing which preceded the bond revocation hearing.

With respect to the allegations involving Gordon, Atlee Wampler (the head of the Miami Organized Crime Strike Force) appeared in court on September 19 before all defense counsel and explained the circumstances surrounding the government's contact with Gordon. Wampler and others who had contact with Gordon have since filed sworn affidavits with the Court which restate the circumstances of their contact with Gordon.

### I. Informant Brown

With respect to the alleged prosecutorial misconduct involving Brown, the Court has already ruled from the bench that the testimony of Brown and the use of his tape-recorded conversations with the defendants in the bond hearing did not violate *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The reasons for the Court's prior ruling were that (1) *Massiah* only proscribed use of allegedly improper testimony at trial and not in a bond hearing (which does not decide the guilt or innocence of the defendants); (2) in the instant case, Brown's testimony and the tape recordings were not the product of an ongoing investigation by the prosecution team, but rather the by-product of an independent investigation by an independent team of government attorneys; and (3) the prosecution team has never been informed of the results of this separate investigation. Hence, the Brown testimony and tape recordings were not the fruits of conduct which violated the defendants' Sixth Amendment right to effective assistance of counsel. The Court now also holds that no prosecutorial misconduct was evident.

### II. Purported Informant Gordon

With respect to alleged prosecutorial misconduct involving Gordon, a purported government informant, the defendants contend that Gordon insinuated himself into a conference among the defendants and one of their attorneys. In his affidavit, Platshorn's counsel charges that Gordon's presence "constituted a carefully engineered, specifically designed scheme by the office of the Federal Prosecutor—and probably the Department of Justice—to cause a Government agent to perpetrate [sic] the confidentiality of that meeting in order to provide the Government with advance knowledge of our tactics and defense plans." For the sake of this motion, the Court assumes that, as stated by Stream, defense strategy was discussed at the conference in which Gordon was present. Stream asserts, not in his motion but in his affidavit, that these facts require "the dismissal of these proceedings on grounds of debasement of the law enforcement system." Presumably, dismissal is the ultimate remedy the defendants seek. Because of the disposition of this motion, the Court does not reach the question of whether such a drastic remedy constitutes a proper remedy for the alleged prosecutorial misconduct.

### A. Weatherford *and Its Progeny*

In *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), a convicted defendant filed a civil complaint under 42 U.S.C. § 1983 against an informant and his superior alleging a deprivation of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. In that case, the Supreme Court held that the presence of a government informant at a conference between the defense attorney and his client did not constitute a *per se* violation of the Sixth Amendment. Reviewing prior cases, the Court noted that "the constitutionality of the conviction depends on whether the overheard conversations have produced, directly or indirectly, *any of the evidence offered at trial.*" 429 U.S. at 552, 97 S.Ct. at 842 (emphasis added). The Court also dismissed an argument

strikingly close to the instant defendants' argument:

[I]t might be argued that Weatherford, a dutiful agent, surely communicated to the prosecutors Bursey's defense plans and strategy and his attorney's efforts to prepare for trial, *all of which was inherently detrimental to Bursey, unfairly advantaged the prosecution, and threatened to subvert the adversary system of criminal justice.*

The argument founders on the District Court's express finding that Weatherford communicated nothing at all to his superiors or to the prosecution about Bursey's trial plans or about the upcoming trial. 429 U.S. at 555–56, 97 S.Ct. at 844 (emphasis added).

Finally, the Court concluded that "[t]here being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment." 429 U.S. at 558, 97 S.Ct. at 845. The Fifth Circuit has interpreted *Weatherford* to hold there to be no Sixth Amendment violation where the criminal defendant can demonstrate no prejudice or receipt of unconstitutionally acquired information by the government. *United States v. Kilrain,* 566 F.2d 979, 982 n. 4, 983 (5th Cir. 1978). *See also Klein v. Smith,* 559 F.2d 189, 197 (2d Cir. 1977) ("The essence of the Court's holding appears to be that, at least where the intrusion by an 'agent' of the prosecution is unintentional or justifiable, there must be some communication of valuable information derived from the intrusion to the prosecutor or his staff in order that there can appear some realistic possibility of prejudice to the defendant").

*B.* Weatherford *Applied*

According to the affidavits submitted by the government, the prosecution team in this case has been completely isolated from any contact with Gordon or any information supplied by him. This Court so finds. The prosecution team in this case consists of three Department of Justice lawyers specially assigned to try this particular case.

Wholly separate from the prosecution team is the Miami Organized Strike Force which pursues its own independent investigations. Attorneys in the Strike Force were contacted by the United States Marshal who stated that Gordon wanted to outline an assassination plot designed to interrupt the trial of this case. Atlee Wampler, the head of the Strike Force, stated in court before all defense counsel on September 19 that no information derived from Gordon would be presented at this trial. Hence, the Court finds that the defendants will not be prejudiced at the trial of this case by any actions of Gordon.

In addition, Wampler stated in court on September 19 that Gordon communicated no information to the Strike Force (and *a fortiori* no information to the prosecution team) on the defense plans, tactics, or strategy. Wampler and Jay Moskowitz, a special attorney with the Strike Force, so state in their sworn affidavits. The Court so finds. Moreover, even if Gordon had communicated some of the defense plans to the Strike Force, the defendants could not have been prejudiced thereby because the prosecution team has no knowledge thereof. Finally, Wampler and Moskowitz state that Gordon approached the government with his proffered "evidence" and that at no time did the government request that Gordon sit in on meetings with defense counsel. Hence, there has been no "purposeful intrusion" by the government in the relationship between defendants and their counsel.

Since (1) information from Gordon neither can nor will be used at trial, (2) the government has not received any word of defense tactics or strategy, and (3) the prosecution team has been isolated from this whole incident, the defendant's Sixth Amendment rights cannot have been violated. Since there has been no Sixth Amendment violation, the Court finds no basis for the allegations of prosecutorial misconduct.

*III. Postscript*

One final word is in order. The disclosure that a person had reported a plot to assassinate witnesses and a federal prosecutor in this case was certainly a most bizarre

turn of events. The Court appreciates that the head of the Strike Force had few, if any, practical alternatives but to investigate the allegation, report to the Court, and disclose this matter to defense counsel without disclosure to the prosecution team. In addition to being bizarre, this matter is collateral to the trial of the instant case since no evidence of this matter will be introduced at trial. The Court sees no need to complicate further the present proceedings by granting an evidentiary hearing on alleged prosecutorial misconduct when such conduct clearly violated no constitutional right of the defendants. Hence, it is hereby

ORDERED AND ADJUDGED that the defendants' motion for an evidentiary hearing is denied.