UNITED STATES of America,
Plaintiff-Appellee,

v.

Hughes A. BAGLEY,
Defendant-Appellant.

No. 79–1581.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1980.

Decided Jan. 30, 1981.

Amended April 13, 1981.

Rehearing and Rehearing En Banc
Denied May 19, 1981.

Robert J. Wayne, Seattle, Wash., argued, Irwin H. Schwartz, Seattle, Wash., on brief, for defendant-appellant.

Francis J. Diskin, Seattle, Wash., for plaintiff-appellee.

## AMENDED OPINION

Before SNEED and FLETCHER, Circuit Judges, and JAMESON *, District Judge.

SNEED, Circuit Judge:

Appellant Bagley was convicted of being a felon in possession and receipt of firearms and of dealing in firearms without a license. The district court entered judgments of acquittal at the close of the government's case on one count of receipt of firearms and on a charge of obstructing justice. Our jurisdiction rests on 28 U.S.C. § 1291 (1976). We affirm.

### I.

### FACTUAL BACKGROUND

In January 1978 appellant Bagley was convicted of a felony and placed on both

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

supervised probation and special parole. By superseding indictment of May 15, 1979, appellant was charged with two counts of being a felon in possession of firearms in violation of 18 U.S.C. App. § 1202(a) (1976), three counts of being a felon in receipt of firearms in violation of 18 U.S.C. § 922(h) (1976), one count of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1) (1976), and one count of obstruction of justice in violation of 18 U.S.C. § 1503 (1976). The factual basis of these charges also supported appellant's simultaneous arrest on a probation revocation warrant. Probation revocation proceedings were held during which the government presented evidence substantially identical to that later presented at appellant's trial, evidence that eventually led to the revocation of his probation.

Prior to trial on the firearms and obstruction of justice counts, the district court held an evidentiary hearing to investigate appellant's claim that the government had violated the rule established in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The court subsequently denied appellant's motion to dismiss the indictment based on the alleged *Massiah* violation. Appellant also moved prior to trial to dismiss the obstruction of justice count, a motion he renewed at the beginning of trial and again at the close of the government's case. The district court denied these motions but decided at the close of all the evidence to dismiss the obstruction of justice count and one count of receipt of firearms. The court instructed the jury not to consider the evidence adduced in support of those counts, but denied appellant's motion for a mistrial. After commencing its deliberations, but before reaching a verdict, the jury sent the bailiff a note asking whether one of the government's witnesses had received immunity for his testimony. Counsel for appellant and the government agreed that the answer was no, and the bailiff conveyed that information to the jury. The attorneys subsequently realized that their answer had placed before the

jury information that had not been introduced as evidence at trial. They then contacted the trial judge who submitted an instruction to the jury to disregard the answer given them by the bailiff. The jury found appellant guilty on the remaining counts and the court imposed a sentence of twelve years imprisonment. Appellant's motion for a mistrial based on the improper submission of the note was denied, as was his motion for a new trial.

Appellant gave notice of appeal and thereafter in March 1980 appellant renewed his motion for a new trial based on the alleged *Massiah* violation. The informant whose conduct had formed the basis of the alleged error and who had been unavailable at the pretrial evidentiary hearing had returned to custody in the jurisdiction. The district court denied the motion and, on July 10, 1980, this court denied appellant's petition for a limited remand for the purpose of holding another evidentiary hearing on the *Massiah* claim.

In this appeal three issues are raised. First, was appellant denied effective assistance of counsel according to *Massiah*, an issue we consider in light of the Supreme Court's recent decision in *United States v. Henry*, —— U.S. ——, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980)?[1] Second, did the trial court err in refusing to declare a mistrial after dismissing the obstruction of justice count? Third, was a mistrial warranted because of the extrajudicial information supplied to the jury during its deliberations?

We resolve each issue against the appellant and affirm his conviction on all counts.

## II.

### THE *MASSIAH* ISSUE

Appellant argues that the government used an informant, Norman Carl McKenzie, who shared appellant's jail cell, to elicit information from him in violation of *Massiah* and *United States v. Henry, supra*. At

---

[1] The Supreme Court decided *Henry* after the parties had filed their briefs but before oral argument, at which counsel addressed the import of *Henry* for this case.

the close of the pretrial evidentiary hearing on this issue the trial court made the following findings from the bench: (1) that federal authorities did not direct McKenzie to elicit information from appellant concerning the charges that led to his conviction and, indeed, that they directed him not to do so; and (2) that the government received no information from McKenzie that it did not already possess.[2] Accordingly, the court held that no *Massiah* violation had occurred.

■ In *Massiah* it was held that the government violates the Sixth Amendment's guarantee of a right to counsel when it uses an informant to "deliberately elicit" incriminating information from a defendant after indictment and without the presence of defendant's counsel. 377 U.S. at 206, 84 S.Ct. at 1203. As rephrased in *Brewer v. Williams*, 430 U.S. 387, 401, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977), "[t]he clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." Both *Brewer* and *Massiah* establish, moreover, that the normal remedy for violation of this right is exclusion of evidence obtained through the illegal interrogation. *See, e. g., United States v. Sander*, 615 F.2d 215, 219 (5th Cir. 1980); *United States v. Kilrain*, 566 F.2d 979, 982 (5th Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 80, 58 L.Ed.2d 109 (1978).

At oral argument appellant's counsel urged that the Supreme Court's recent decision in *United States v. Henry, supra*, has removed all doubt and clearly requires reversal. In *Henry* government agents instructed an informant who shared defendant's jail cell "to be alert to any statements made by the federal prisoners, but not to initiate any conversation with or question" the defendant regarding the charges against

him. 447 U.S. at 266, 100 S.Ct. at 2184. The informant subsequently testified at trial about incriminating statements made by the defendant while the two shared the jail cell. The Supreme Court held that although government agents instructed the informant not to act affirmatively in eliciting information, the factual circumstances, which included conversations in which the informant was not a "passive listener," demonstrated constitutional error: "By intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the government violated Henry's Sixth Amendment right to counsel." *Id.* 274, 100 S.Ct. at 2189.[3]

■ Prior to *Henry* this court held that to establish a violation of *Massiah* defendant must show that he suffered prejudice at trial as a result of evidence obtained from interrogation outside the presence of counsel. *United States v. Glover*, 596 F.2d 857, 862–64 (9th Cir.), *cert. denied*, 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979); *United States v. Irwin*, 612 F.2d 1182, 1186–87 (9th Cir. 1980). *Accord, United States v. Sander, supra; United States v. Kilrain, supra; United States v. Woods*, 544 F.2d 242 (6th Cir. 1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977); *United States v. Meinster*, 478 F.Supp. 1131 (S.D. Fla.1979). The Supreme Court has employed a similar standard in cases in which government agents have been present at meetings between criminal defendants and their attorneys. *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *see Klein v. Smith*, 559 F.2d 189 (2d Cir.), *cert. denied*, 434 U.S. 987, 98 S.Ct. 617, 54 L.Ed.2d 482 (1977); *Mastrian v. McManus*, 554 F.2d 813 (8th Cir.), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977); *United States v. Valencia*, 541 F.2d 618 (6th Cir. 1976).

---

**2.** Reporter's Transcript at 89–90.

**3.** The extent to which *Henry* has modified *Massiah*, if at all, is not entirely clear. Chief Justice Burger, in his opinion for the Court, purported merely to apply the test of *Massiah*. 447 U.S. at 270, 100 S.Ct. at 2186 ("The question here is whether under the facts of this

case, a Government agent 'deliberately elicited' incriminating statements from Henry within the meaning of *Massiah*."). *See id.* at 275, 277, 100 S.Ct. at 2189, 2190 (Powell, J., concurring). In dissent, however, Justice Blackmun read the opinion as establishing a " 'likely to induce' test" that "fundamentally restructures *Massiah*." *Id.* 280, 100 S.Ct. at 2192.

The question is whether *Henry* has affected the vitality of this court's rule in *Glover* requiring a showing of prejudice to defendant at trial. We hold that it has not. It is true that the Supreme Court has never directly addressed the question whether a showing of prejudice is necessary in a *Massiah* claim. In *Brewer* and *Massiah* the issue was not raised, probably because in both cases the illegal interrogations directly produced highly incriminating evidence used against the defendants at trial. In *Henry* the informant also testified against defendant at trial and the Court was again confronted with a situation in which prejudice was apparent.

The showing of prejudice required by *Glover* and readily evident in *Brewer, Massiah,* and *Henry* is not made by the facts of this case.[4] Our review of the record convinces us that the district court was correct in concluding that the informant McKenzie did not produce evidence prejudicial to appellant at trial. Counsel for appellant concedes as much in his brief.[5] First, the preliminary hearing testimony suggests that McKenzie revealed nothing more to the federal agents who questioned him than appellant's description of the charges that brought him into custody. McKenzie's primary value was in aiding local law enforcement authorities regarding appellant's involvement in two unsolved local homicides.[6] The U. S. Attorney's Office cooperated to the extent of arranging to dismiss federal charges against McKenzie if he continued to assist local authorities in their homicide investigation. Second, the government prosecutors in this case were careful to insulate themselves from any information McKenzie might have provided to federal agents who debriefed him; the prosecutors did not receive any notes, tapes, or statements relating to McKenzie's conversations with appellant. Also, McKenzie never testified against appellant in the federal proceedings. Third, the government's contention that it received no evidence that it did not already possess is fully supported by a comparison of the trial record and the record of probation revocation proceedings against appellant, which were conducted before McKenzie ever made contact with the U. S. Attorney's Office with his offer of cooperation. The factual basis for the criminal charges and the probation revocation were identical and the same material witnesses appeared for the government at both proceedings.[7]

We recognize that McKenzie was unavailable to testify at the pretrial evidentiary hearing on the *Massiah* claim. However, we are unpersuaded that McKenzie's reappearance after appellant's conviction warrants a remand to receive his testimony. This court has rejected that request once before and we do not believe that *Henry* changes matters. It is reasonable to conclude that McKenzie's testimony could not affect the determination by the trial court

---

4. Consequently, we do not decide whether appellant has in other respects brought his case within the ambit of *Henry.*

5. Brief for Appellant at 7. Counsel recognized that *Glover* precluded relief but wished to preserve the issue because a petition for certiorari in that case was then pending before the Supreme Court. Since the brief was filed, of course, the Supreme Court declined to review *Glover* and decided *Henry.* In addition, this court granted appellant's request for substitute appellate counsel, who nevertheless declined to prepare a new brief.

6. Federal authorities had arrested McKenzie for violating probation from an earlier federal sentence and he was in jail awaiting disposition of probation revocation proceedings. Prior to his initial appearance in those proceedings, McKenzie contacted an Assistant U. S. Attorney with an offer to provide information about various criminal activities. McKenzie's report that appellant had admitted to involvement in two unsolved homicides led the U. S. Attorney's Office to refer McKenzie to local authorities for further investigation. The U. S. Attorney's Office continued to participate since the consideration McKenzie was to receive in return for his help related to the federal probation revocation.

7. The government's case consisted primarily of witnesses who testified to purchasing or selling firearms in transactions with appellant. Since the conditions of appellant's probation included prohibitions of the possession or receipt of firearms, the same material witnesses testified at the probation revocation proceedings.

that the government was in possession of all material evidence against appellant before McKenzie ever proposed to provide information.

## III.

### THE PREJUDICIAL EVIDENCE ISSUE

At the close of appellant's case the trial court dismissed the obstruction of justice count and one count of receipt of firearms. The court instructed the jury not to consider any of the evidence presented in support of those counts, but denied appellant's motion for a mistrial based on the prejudicial impact of that evidence.[8] Appellant renews his argument here but has confined it to the evidence presented in support of the obstruction of justice count.

In that count the government charged that appellant had killed the cat of his ex-girlfriend, Christine Larson, because she had talked with his probation officer, which conversation led to investigation of the firearms violations. The trial court dismissed the count, apparently because the cat had been killed prior to Larson's conversation with the probation officer. Before the court dismissed the count the government presented testimony by Larson, appellant's probation officer, and a friend, Paul Good. Appellant argues that these witnesses presented prejudicial testimony that became irrelevant after dismissal of the count.

■ Under these circumstances we reverse only when we find that the trial court abused its discretion in refusing to declare a mistrial. *United States v. Nace,* 561 F.2d 763 (9th Cir. 1977); *United States v. Faulkenbery,* 472 F.2d 879 (9th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973); *United States v. Carlson,* 423 F.2d

431 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 94, 27 L.Ed.2d 84 (1970). Moreover, the judgment of the trial judge, who was in the best position to assess the probable impact of the evidence on the jury in light of all the evidence presented, must be accorded deference.

■ Our review of the record requires that we hold that the trial judge was correct. The probation officer's testimony merely revealed that appellant was on probation from a previous conviction and that he was aware of the strictures against possession of firearms. His prior conviction itself was an element of the firearms counts and thus was properly presented to the jury. Under these circumstances, evidence of probation was not prejudicial. The evidence relating to the cat murder certainly did not place appellant in a sympathetic light, but it does not warrant a new trial. Admissible evidence directly relating to the firearms counts was more than sufficient to support a conviction, and the trial court's curative instructions were sufficient to assure that inadmissible evidence did not prejudice the jury's deliberations. *See United States v. Berry,* 627 F.2d 193 at 198 (9th Cir. 1980); *United States v. Johnson,* 618 F.2d 60, 62 (9th Cir. 1980); *United States v. Pavon,* 561 F.2d 799, 803 (9th Cir. 1977); *United States v. Nace, supra,* 561 F.2d at 769.

## IV.

### THE NOTE TO THE JURY ISSUE

■ When information not placed in evidence reaches the jury during its deliberations, the defendant is entitled to a new trial if "there existed a reasonable possibility that the extrinsic material could have affected the verdict." *United States v.*

---

**8.** The court's instruction read as follows:

> If I may have your attention, ladies and gentlemen, I am about to read the court's instructions to you in this case. Before doing so, however, I would advise that Count III and Count V are no longer before you for your consideration. They have been withdrawn by the Court in that respect. Any testimony which may have been adduced during the course of the trial relating to ei-

ther or both of those two counts, you should now remove from your memory and the Court expects you to do that.

Reporter's Transcript at 312. Later, the court read to the jury the counts that had been dismissed, as they appeared in the indictment. The court also identified the witness who had testified in support of the dismissed firearm count and whose testimony was to be ignored. Reporter's Transcript at 323.

*Vasquez*, 597 F.2d 192, 193 (9th Cir. 1979). We have recently interpreted the "reasonable possibility" test of *Vasquez* to be equivalent to the harmless error rule applicable to constitutional errors. *Gibson v. Clanon*, 633 F.2d 851 (9th Cir. 1980). Thus, although *Gibson* does not establish a new standard, it restates the *Vasquez* test as "whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." *Id.* at 855.

After being informed of the answer given to the jury's question, the judge gave the following instruction: "The answer to the question posed was not in evidence. You must consider only evidence presented during the trial. You must disregard the answer sent to you." [9] As the judge's law clerk was about to deliver the instruction, the jurors sounded the attention buzzer indicating they wished to communicate with the court. The law clerk delivered the instruction to the foreman with instructions that the jury read and consider it before communicating further. Roughly two minutes later, the jury returned with a unanimous verdict of guilty on all counts. Appellant's counsel then moved for a mistrial, which the trial court denied.

■ We hold that the trial court did not err. The jury's question may, as appellant suggests, indicate that some jurors doubted the credibility of the government's witness and the subsequent answer may have removed those doubts. It is also possible, however, that appellant's trial counsel precipitated the jury's inquiry by suggesting in closing argument that "witnesses" had been immunized, when the evidence indicated that only one such witness had been granted immunity. In any case, testimony of the witness in question was merely cumulative to that of his business partner. Both testified concerning their *joint* purchase of guns from appellant on behalf of their business. Whether the question is phrased as in *Vasquez* or as in *Gibson*, we are satisfied that the trial court acted correctly in denying a mistrial.

■ Our consideration of *Gibson* does not warrant a different conclusion. The dangers generally posed by consideration of extrajudicial information, which the *Gibson* court emphasized, are not present here. First, it was noted that because a defendant has no idea what information the jury may have considered, he has no opportunity to offer evidence in rebuttal or to discuss its significance in argument to the jury. Id. at 854. In this case the defendant knew precisely what evidence the jury had considered before it rendered its verdict, for his trial counsel had concurred in presenting the information to the jury. That information—that a particular witness had not received immunity—was accurate. Moreover, it was not information, such as that considered by the jury in *Gibson*, which the trial court had previously ruled inadmissible. A second danger mentioned in *Gibson* arises from the inability of the trial court to offer a curative instruction. *Id.* In this case, however, the parties knew of the extrajudicial information before the jury rendered its verdict, and a curative instruction was issued. Such instructions are generally deemed sufficient as curative of prejudicial impact. *E. g., United States v. Berry, supra; United States v. Johnson, supra.*

Finally, the trial judge in *Gibson*, after initially applying a standard more lenient than that established in *Vasquez*, noted that if the more rigorous standard had been applied, a different result would have been reached. 633 F.2d at 853. The *Gibson* court accorded this evaluation great weight. *Id.* at 855. It emphasized that the trial court "was in a far better position to evaluate the credibility of the witnesses" than an appellate court reviewing a "cold record." There is no indication that the trial court in this case applied an incorrect standard and, in light of the facts, we see no reason to question his judgment.

Affirmed.

FLETCHER, Circuit Judge, concurring in part and dissenting in part:

I write separately to express my views regarding the holding in *Massiah v. United*

---

**9.** Reporter's Transcript at 364; Clerk's Record at 45a.

*States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In addition, I dissent from the majority's conclusion that appellant received a fair trial despite the possibility that extrinsic evidence may have affected the jury's verdict. I would remand for a new trial.

## I

### THE *MASSIAH* ISSUE

The majority holds that this case is controlled by our previous decisions in *United States v. Irwin,* 612 F.2d 1182 (9th Cir. 1980), and *United States v. Glover,* 596 F.2d 857 (9th Cir.), *cert. denied,* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979). I agree, but I believe the majority has somewhat overstated *Glover's* reach.

The majority states that in *Glover* and *Irwin* "this court held that to establish a violation of *Massiah* defendant must show that he suffered prejudice at trial as a result of evidence obtained from interrogation outside the presence of counsel." In a case like this one, where none of the evidence obtained from the informant was used at trial, *Glover* and *Irwin* do require prejudice. Both *Glover* and *Irwin* recognized, however, that *Massiah* established an exclusionary rule prohibiting the use of evidence obtained from an informant. *Irwin,* 612 F.2d at 1187 n. 15; *Glover,* 596 F.2d at 864 n. 12. When evidence obtained from an informant is used at trial, the defendant is not required to show prejudice in order to establish a *Massiah* violation.

## II

### THE EXTRINSIC EVIDENCE

The majority correctly states the standard to be applied in cases where the jury has received information not placed in evidence: a new trial must be granted unless "it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." *Gibson v. Clanon,*

633 F.2d 851, 855 (9th Cir. 1980). We recognized in *Gibson* that a defendant's sixth amendment right to confrontation is lost when the jury considers extrinsic evidence, and that the "harmless beyond a reasonable doubt" standard from *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), was therefore appropriate.

Under the facts of this case, I fail to see how the majority can conclude beyond a reasonable doubt that the note to the jury did not affect their verdict. The majority recognizes that "[t]he jury's question may . . . indicate that some jurors doubted the credibility of the government's witness and the subsequent answer may have removed those doubts." As we stated in *Gibson,* "the fact that [the] jurors believed that it was necessary to obtain more evidence is, by itself, an indication that there may have been a need to resolve some lingering hesitation or uncertainty." 633 F.2d at 855. Where the jury's uncertainty centered around the credibility of a key witness, the resolution of that uncertainty could unquestionably have affected the verdict.[1]

In fact, it appears quite likely that the verdict in this case was affected. The jury signalled its desire to communicate with the court shortly after receiving the answer to its question but before hearing the cautionary instruction. Although the court then instructed the jury not to consider the answer to the question, the jury deliberated for only two more minutes before returning a guilty verdict.

Finally, I am unpersuaded by the majority's suggestion that we defer to the judgment of the trial court because "[t]here is no indication that the trial court applied an incorrect standard." I would point out that there is also no indication that the trial court applied the correct standard. When constitutional error has been committed, the burden of proof is on the Government to demonstrate beyond a reasonable doubt

---

1. The majority characterizes the witness' testimony as "merely cumulative." The Supreme Court has, of course, rejected the suggestion that "if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error." *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

that the error did not contribute to the jury's verdict. *Fontaine v. California*, 390 U.S. 593, 596, 88 S.Ct. 1229, 1231, 20 L.Ed.2d 154 (1968) (per curiam); *Chapman v. California*, 386 U.S. at 26, 87 S.Ct. at 829. The Government has not met its burden of proof in this court, and we cannot assume that the burden was met before the court below.

I would reverse.