**UNITED STATES of America, Plaintiff,**

v.

**Eugene BOFFA, Sr. et al., Defendants.**

**Crim. A. No. 80–36.**

United States District Court,
D. Delaware.

March 31, 1981.

See also, D.C., 89 F.R.D. 523.

Joel M. Friedman, Edward J. Levitt and Ronald G. Cole, Philadelphia Strike Force, Philadelphia, Pa., Kenneth F. Noto, U. S. Dept. of Justice, Washington, D. C., and James W. Garvin, Jr., U. S. Atty., Wilmington, Del., for plaintiff.

James C. Schwartzman of Schwartzman & Hepps, Philadelphia, Pa., for defendant Eugene Boffa, Sr.

Glenn A. Zeitz of Zeitz & Zeitz, Philadelphia, Pa., for defendant Francis Sheeran.

Thomas C. Carroll of Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for defendant Louis Kalmar, Sr.

Ronald F. Kidd of Duane, Morris & Heckscher, Philadelphia, Pa., for defendant Robert Boffa, Sr.

Thomas A. Bergstrom, Philadelphia, Pa., for defendant Chandler Lemon.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LATCHUM, Chief Judge.

This criminal action was commenced in this Court on July 14, 1980, when the Grand Jury returned an eleven count indictment against Eugene Boffa, Sr., Francis Sheeran, Louis Kalmar, Sr., Robert Boffa, Sr., Chandler Lemon, David Mishler, and Robert Rispo.[1] Count I charges all the defendants with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d). Count II charges all the defendants with a substantive violation of RICO, 18 U.S.C. § 1962(c). Counts III and IV charge defendant Sheeran as President of Local 326, International Brotherhood of Teamsters, with violating certain criminal provisions of the Taft-Hartley Act, 29 U.S.C. § 186(b)(1) and (d). Counts V through XI charge defendants Eugene Boffa, Sr., Sheeran, and Lemon with mail fraud in violation of 18 U.S.C. §§ 1341 and 2.

During the course of a prior suppression hearing on January 8, 1981, the attorney for defendant Robert Rispo advised the Court that his client had entered into a plea agreement with the Government the night before and had entered into the Federal Witness Protection Program. Counsel requested the Court to set a hearing at which time Rispo could change his plea to guilty.[2] Later that same day during the hearing, the Government revealed that defendant Rispo had been a government informant.[3]

This revelation prompted the remaining defendants[4] to file a joint motion for discovery and for a pretrial evidentiary hearing into a broad range of issues which these defendants perceived were raised by Rispo's status as a government informer.[5] Their

---

1. Docket Item ("D.I.") 1; defendant David Mishler was severed from this action on December 12, 1980 (D.I. 123, ¶ 4); defendant Robert Rispo entered a plea of guilty to Count I on March 16, 1981, pursuant to a plea agreement with the Government (D.I. 179) and defendant Sheeran was severed from this case by a Memorandum and Order entered on March 20, 1981 (D.I. 187 & 188).

2. D.I. 149, Tr. H 58–59.

3. D.I. 149, Tr. H 101–102.

4. Eugene Boffa, Sr., Kalmar, Sheeran, Robert Boffa, Sr., and Lemon.

5. D.I. 137.

motion sought to explore through discovery and a pretrial evidentiary hearing three separate areas of inquiry. First, defendants sought to determine the nature and content of Rispo's contacts with the Government in the period prior to the time the indictment was returned against the defendants, from 1973 to July 14, 1980. Second, defendants sought to explore the circumstances giving rise to the indictment, including discovery directed to the portion of the presentation made by the Government to the indicting Grand Jury concerning Rispo's criminal activities. Third, the defendants sought further elaboration of Rispo's post-indictment activities and specifically alleged in this regard that Rispo received information concerning defendants' trial strategy both directly, and indirectly through his first court-appointed counsel, Mr. James F. Kipp, Esq., from defendants and their attorneys. The Court in a detailed Memorandum Opinion and Order entered on February 17, 1981,[6] fully addressed these matters and concluded that only the third category of inquiry, concerning Rispo's activities *after* the indictment was returned, was a proper subject of a pretrial evidentiary hearing. In this regard, the Court said:

> Once formal charges have been filed, the use of government informants to secure information from a defendant is sharply curtailed in at least two respects. First, the Supreme Court has held that the Sixth Amendment is violated whenever an undisclosed government agent "deliberately elicits" incriminating statements from a defendant in the absence of counsel, after the defendant has been indicted, if those statements are later introduced into evidence at trial. *See Massiah v. United States*, 377 U.S. 201, 206 [84 S.Ct. 1199, 1203, 12 L.Ed.2d 246] (1964). Second, in a line of cases exemplified by

*United States v. Rispo*, 460 F.2d 965 (C.A.3, 1972), the courts have held that the presence of informants in the defense camp during attorney-client conferences, after the defendant has been indicted, similarly violates the Sixth Amendment where the trial strategy gleaned from these meetings is disclosed by the informant to the government and some prejudice thereby accrues to the defendant. *See United States v. Morrison*, —— U.S. —— [101 S.Ct. 665, 66 L.Ed.2d 564] (1981); *Weatherford v. Bursey*, 429 U.S. 545 [97 S.Ct. 837, 51 L.Ed.2d 30] (1977); *United States v. Rispo, supra; United States v. Natale*, 494 F.Supp. 1114 (E.D. Pa.1979).

(D.I. 160, pp. 11–12; 89 F.R.D. at 530–31.)

Based on this reasoning, the Court ordered a pretrial evidentiary hearing to be held which would uncover any *Massiah*-type violations [7] as well as an inquiry to focus on defendants' claim that Rispo received information concerning defendants' trial strategy which was then transmitted to the Government. The mechanics and general outline of the procedure to be followed at the hearing for determination of the relevant issues were established in the opinion and limited discovery was granted.[8]

The hearing was held on March 17, 1981.[9] After considering the testimony of the witnesses and all evidence [10] presented, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. No evidence whatsoever was adduced to show that Rispo, as an undisclosed government informant, "deliberately elicited" or "otherwise obtained" any incriminating statements from any of his co-defendants after the indictment was returned on July 14, 1980, to the date of the hearing. (D.I. 190, Tr. J 22; 153.)

---

**6.** D.I. 160 & 161; 89 F.R.D. 523 (D.Del.1981).

**7.** While the defendants did not request this type of inquiry, the Court *sua sponte* included it as part of the pretrial evidentiary hearing.

**8.** D.I. 160 & 161.

**9.** D.I. 190–Transcript ("Tr.") of Hearing.

**10.** Seven witnesses testified at the hearing and the Court considered the affidavit of Ronald G. Cole, Esq., filed in response to defendants' joint motion. (D.I. 169.)

2. James F. Kipp, Esq., Rispo's first court-appointed attorney, never informed Rispo of any of Kipp's conversations or strategy discussions which he had with other defense counsel. (D.I. 190, Tr. J 127–28; 100; 112–114.)

3. Rispo had both telephone and face-to-face conversations with defendants Sheeran, Eugene Boffa, Sr., and Kalmar [11] after the return of the indictment. These conversations centered around Rispo's concerns that: (a) he was in financial straits and unable to obtain an attorney of his choice; and (b) he was being pushed aside in the case by the other defendants and their counsel who refused to share information with him. Rispo feared that he would be made the scapegoat by the other defendants and he sought assistance from Boffa, Sheeran and Kalmar in obtaining adequate representation. The defendants and their counsel also discussed with Rispo general insignificant aspects of the case such as the probable length of trial and their perception that the case was not "serious." (D.I. 190, Tr. J 24–26; 43–47; 76–78; 80–89; 149–50; 160.)

4. Defendant Sheeran testified that he had discussed defense strategy with Rispo as follows: "Two or three different times, Mr. Rispo would call me and ask to meet at the Copper Penny. On occasions he asked me what I intended to do in the case, and I told him the witnesses I was going to subpoena to prove my case. I gave him the names of the witnesses, the drivers for Inland Container and Countrywide Personnel—I mean Crown Zellerbach. I gave him the names. I said 'I intend to have charts made.' The charts were to prove my defense as to the case of the prosecution which was all lies, I was going to prove it by my charts and the witnesses I put in front of this Court." (D.I. 190, Tr. J 141.) Sheeran also testified that he told Rispo that he intended to take the stand in his own defense (id.) Rispo denied that Sheeran had revealed to him any defense strategy. (D.I. 190, Tr. J 85, 117, 118, 119.)

5. Defendant Eugene Boffa testified that in conversations he had with Rispo after the return of the indictment he discussed defense strategy in that: "We spoke about Van Wert, and he had asked me what we intended to do, and I told him that we were all going to testify in our behalf and that I was not sure or not but we might subpoena the drivers." (D.I. 190, Tr. J 149, 150.) However, Mr. Boffa testified that he didn't tell Rispo the Van Wert drivers' names which the defense intended to subpoena because he did not know them. (Id. at J 151, 153.) Rispo denied that Eugene Boffa had given him this information. (Id. at J 24–25.)

6. Mr. Schwartzman, attorney for Eugene Boffa, testified that he drove Rispo from Philadelphia to Wilmington and back for the arraignment because Rispo had no car. (Id. at J 155.) Schwartzman testified that during those trips, he discussed with Mr. Rispo the factual basis of the case and the "problem [Rispo] was having" (id. at J 156) and "we also talked about Van Wert, Ohio, because that was the area of the indictment that he was involved in" (id. at J 157). Schwartzman also testified that "I told him one thing we intended to do was subpoena and call all the drivers that were hired by Universal Coordinators and subsequently hired by Countrywide Personnel of Chicago, that we would probably bring the union agents involved, as well as officials from Continental Can and I told him that Mr. Boffa and the other defendants to my knowledge intended to testify in their own behalf" (id. at J 158). Mr. Schwartzman also discussed with Rispo the mechanics for entering a guilty plea in this case. (Id. at J 157.) Rispo testified that he recalled discussing his "predicament" with Mr. Schwartzman and that they discussed the Van Wert situation as it related to Rispo (id. at J 28–30). Rispo also testified that Schwartzman asked him how the labor leasing business operates and that they dis-

11. Rispo never had any conversations regarding the case with defendant Robert Boffa, Sr., or his counsel, Mr. Kidd (D.I. 190, Tr. J 37–39) or with defendant Lemon or his counsel, Mr. Bergstrom (D.I. 190, Tr. J 39–40.)

cussed several general unrelated topics. (*Id.* at J 30–31.)

7. Accepting the testimony referred to above by Sheeran, Eugene Boffa, and Mr. Schwartzman concerning the matters which they discussed with Rispo as true, the Court finds that this information was not communicated by Rispo either to Special Agent Quinn John Tamm, Rispo's FBI contact, or to the government attorneys prosecuting this case after the indictment was returned. (D.I. 190, Tr. J 200–201; 206; D.I. 169.)

8. Rispo was in contact following his indictment on some fifteen different occasions with Special Agent Tamm of the FBI (D.I. 190, Tr. J 175, 195). Tamm contacted Rispo on July 15, 1980 and informed him that he had been instructed by superiors, because of Rispo's indictment, to break-off all contact with him. (*Id.* Tr. J 177–178.) Rispo contacted Tamm on September 30, 1980 and wanted to talk about perhaps becoming a government witness in the case (*id.* Tr. J 179). The other contacts between Rispo and Tamm concerned the procedures for obtaining a different attorney (*id.* Tr. J 189), and the possibility of becoming a government witness and of entering the Witness Protective Program.[12] Rispo never discussed with Tamm any statements which Rispo attributed to his co-defendants as incriminating, which Rispo learned after the indictment, nor did Rispo give Tamm any information concerning his co-defendants' trial strategy. (*Id.* Tr. J 200–201.) In fact, Tamm's FBI reports concerning his meetings with Rispo indicate that Tamm repeatedly instructed Rispo that he should not discuss with Tamm any trial strategy he may have learned from any of the defendants and their counsel.

### CONCLUSIONS OF LAW

■ 1. The Court concludes that Rispo's co-defendants never made any incriminating statements to him after July 14, 1980.

Thus, defendants are entitled to no relief under *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964).

■ 2. Assuming that Eugene Boffa, Sheeran and Mr. Schwartzman had the conversations with Rispo after July 14, 1980 to which they testified and referred to above as Findings of Fact 4, 5 and 6, the Court concludes that none of this information given to Rispo was disclosed by him to the government prosecutors or personnel. Thus defendants have failed to prove, in accordance with the Court's February 17, 1981 Memorandum Opinion and Order, that Rispo's conduct "either resulted in or presents a substantial threat of, actual prejudice to the ability of defendants' counsel to provide adequate representation at the trial of this case or to defendants' ability to receive a fair trial." 89 F.R.D. at 533; *see United States v. Morrison*, —— U.S. ——, 101 S.Ct. 665, 66 L.Ed.2d 564, (1981); *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Moreover, even if Rispo *had* disclosed to the Government the information claimed by the defendants, *viz.*, that: (a) the defendants would testify in their own behalf at trial; (b) the defendants intended to subpoena some unnamed drivers at the Van Wert facility and certain union agents and officials from Continental Can; and (c) Sheeran intended to use "charts" to establish an unspecified defense at trial, the Court finds that this information is too general in nature as to result in actual prejudice, or a substantial threat thereof, to the defendants by its disclosure to the Government.

3. Accordingly, the Court concludes that there has been no governmental intrusion through Rispo into any attorney-client confidences of his co-defendants, and no attempt to so intrude; there was no illegally or improperly secured information and there was no disclosure of any attorney-

---

12. Upon the motion of Sheeran's attorney, the Court has examined *in camera* the memoranda kept by Tamm of his contacts with Rispo (*Id.* Tr. J 196, 200) and these documents support Tamm's testimony and show that no incrimina-

ting statements or trial strategy of the defendants were ever discussed with Tamm by Rispo which Rispo had learned after July 14, 1980. (D.I. 195 under seal.)

client confidences or defense strategy to any member of the governmental prosecution team.

Consequently, there is no relief to which the defendants are entitled as a consequence of the Rispo hearing.

 Following the evidentiary hearing, Eugene Boffa's attorney pointed out what he perceived to be a large number of discrepancies between Rispo's testimony and that of Special Agent Tamm (D.I. 189) and suggested that the Court should determine that Rispo committed perjury and as minimum relief the Court should forbid Rispo from testifying at trial. (D.I. 189, p. 3.) This question is one for the jury to resolve on the basis of credibility at trial.

Boffa's attorney also complained that several witnesses, *viz.*, Special Agents Frank Storey and James Dooley and Government Attorney Joel Friedman, whom he attempted to subpoena the day before the hearing, failed to appear and their testimony would have been important at the hearing. (D.I. 189, p. 2.) The subpoenas were served on the legal offices of the FBI in Philadelphia. At the time the subpoenas were served, they were not delivered to the person named nor was the witness tendered the fee for 1 day's attendance and the mileage allowed by law as required by Rule 17(d), F.R.Cr.P. (D.I. 190, Tr. J 216; D.I. 189, p. 3.) Relying upon his past experience as an Assistant United States Attorney, Boffa's counsel stated that he had "never before seen a situation in which a witness fee was either required or accepted for a government agent testifying in a case in his official capacity." That may be so but it does not change Rule 17(d) and the Court may take judicial notice of the strict budgetary control that is being exercised over all governmental expenses by the present administration. The hearing will not be reopened for the purpose of properly resubpoenaing these witnesses. This Court has two weeks of trials in other matters before the final pretrial conference and trial of this case and there is no time to reopen the hearing especially considering that it was defendant's attorney's fault that the witnesses did not appear.

Finally, defendant Kalmar's attorney requested the Court to compel the Government to disclose the pre-indictment relationship of Rispo and the Government. He argues on the basis of a number of cited cases that this should be ordered so that the defendants may demonstrate that Rispo was a "plant" in the defense camp. As stated in its February 17, 1981 Memorandum Opinion, the Court concludes that the factual basis for this relief is lacking and that defendants have misread and misinterpreted the cases cited for their propositions. That motion will also be denied.

An Order will be entered in accordance with these findings of fact and conclusions of law.