The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Timothy BATTLE, Defendant-Appellant.

No. 83CA0967.

Colorado Court of Appeals, Div. II.

Aug. 30, 1984.

Rehearing Denied Sept. 27, 1984.

Certiorari Denied Jan. 21, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia D. Jones, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Michael A. Warren, Deputy State Public Defender, Colorado Springs, for defendant-appellant.

BERMAN, Judge.

Defendant, Timothy Battle, appeals his conviction by a jury of one count of criminal solicitation to commit first degree murder. We affirm.

On June 16, 1982, defendant was charged in another case with robbery of the elderly and third degree assault. Co-defendant, Donald Sims, whose case was dismissed at the preliminary hearing, was to testify at defendant's trial that he had participated with defendant in the robbery of the elderly victim and had assaulted the victim. De-fendant's trial on the robbery and assault charges was to take place on September 13, 1982, and, if convicted of those charges, defendant faced a maximum sentence of 15 years.

A few days prior to defendant's September 13th trial, the district attorney's office learned from a fellow inmate of defendant's at the county jail that defendant sought to have Sims killed to prevent him from testifying against him. The inmate reported that defendant had asked him to do the killing, to which the inmate replied he "wasn't into violence of any kind," but that he did have a friend named Johnny in Texas who could be hired to accomplish the deed.

On August 27, 1982, the District Attorney's Office intercepted a letter from the defendant addressed to Johnny. The letter stated that the defendant "wanted [Sims and another person] dead an there bodys no were to be found [sic]." The defendant gave a number of addresses where Sims and his relatives could be found, outlined a plan by which the murder could be success-fully accomplished, and mentioned compensation for the task.

On September 7, 1982, the District Attorney's Office arranged for an undercover agent to pose as Johnny, the "hit man." The next day, posing as "Johnny Walker from Texas," the agent met with defendant and asked if defendant was serious about what he had written in the letter and about what he wanted done. Defendant said, "Yes," that he was serious and that he would like to have Johnny "take Sims out." The agent asked defendant what he meant and defendant responded, "I want you to kill him." Defendant then agreed to pay $5,000 for the agent's services as a "hit man."

On December 15, 1982, defendant was charged with two counts of solicitation to commit first degree murder. On January 21, 1983, defendant unsuccessfully moved to suppress his statements to the agent based on the agent not having advised him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966). Defendant renewed his motion to suppress twice during the course of the trial and the court denied the motion on each occasion.

Defendant's only contention is that the trial court violated his Fifth and Sixth Amendment rights by denying his repeated motions to suppress his statements to the undercover agent because the agent conducted "custodial interrogation" of defendant without first advising him of his *Miranda* rights and notifying defendant's attorney and allowing him to be present during the "interrogation." We disagree, holding instead that the landmark case of *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) is dispositive here.

Hoffa was originally charged with violating a provision of the Taft-Hartley Act. During the course of trial on those charges, he allegedly attempted to bribe certain members of the jury. Charges on the bribery offense were brought, and at trial, the principal witness was a "government informer" who had posed as part of Hoffa's entourage during the Taft-Hartley trial. Allegations similar to those raised here were asserted with regard to the testimony of the informer. Nevertheless, the Supreme Court affirmed Hoffa's convictions for bribery, holding that "[t]he Constitution does not require us to upset the jury's verdict."

The issue before the Supreme Court in *Hoffa* was:

"Whether evidence obtained by the Government by means of deceptively placing a secret informer in the quarters and councils of a defendant during one criminal trial so violates the defendant's Fourth, Fifth, and Sixth Amendment rights that suppression of such evidence is required in a subsequent trial of the same defendant on a different charge."

That issue is the precise issue with which we are faced here. Hence, the Supreme Court's underlying rationale for its determination of the issue in *Hoffa, supra,* is equally applicable to our determination of the case before us.

With regard to the Fifth Amendment argument, the Supreme Court reasoned that:

"[N]o claim ... could be made that the petitioner's incriminating statements were the product of any sort of coercion, legal or factual. The petitioner's conversations with [the informer] and in [the informer's] presence were wholly voluntary. For that reason, if for no other, it is clear that no right protected by the Fifth Amendment privilege against compulsory self-incrimination was violated in this case."

With regard to the Sixth Amendment argument, the Court stated:

"[Petitioner's] argument goes as follows: Not later than October 25, 1962, the Government had sufficient grounds for taking the petitioner into custody and charging him with endeavors to tamper with the Test Fleet jury. Had the Government done so, it could not have continued to question the petitioner without observance of his Sixth Amendment right to counsel. *Massiah v. United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)]; *Escobedo v. Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)]. Therefore, the argument concludes, evidence of statements made by the petitioner subsequent to October 25 was inadmissible, because the Government acquired that evidence only by flouting the petitioner's Sixth Amendment right to counsel.

"Nothing in *Massiah,* in *Escobedo,* or in any other case that has come to our attention, even remotely suggests this novel and paradoxical constitutional doctrine, and we decline to adopt it now. There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum

evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

When posing as Johnny Walker, the undercover agent played the exact same part here as the informer played in the *Hoffa* case. His conversations with defendant, like those at issue in *Hoffa*, were by defendant's express invitation. The United States Supreme Court found no violation of either the Fifth or Sixth Amendment rights of Hoffa, and we, similarly, conclude that the undercover agent's actions here were in full compliance with the federal Constitution.

Judgment affirmed.

SMITH and VAN CISE, JJ., concur.