Filed 5/18/15  P. v. Morris CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C074119 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00027) |
| v. | |
| STEVEN WAYNE MORRIS, JR., | |
| Defendant and Appellant. | |

A jury convicted defendant Steven Wayne Morris, Jr., of 30 counts of lewd and lascivious acts with a child under the age of 14 years and found that he engaged in substantial sexual conduct with the victim.  The trial court sentenced defendant to state prison for an aggregate sentence of 40 years.

Defendant appeals, challenging the trial court's refusal to exclude incriminating statements he made to law enforcement officers.  Defendant contends his waiver of rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*) was not

1

voluntary in that law enforcement engaged in "softening him up" prior to his waiver, and his statements were obtained in violation of his Sixth Amendment right to counsel. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In view of defendant's contention, a detailed recitation of the facts is not warranted. Suffice it to say that defendant had sexual intercourse with the victim, his family's babysitter, when she was 12 and 13 years of age and he was 25 and 26 years of age. He freely confessed to his ex-fiancée and then to law enforcement about having had sexual intercourse with the victim 30 times. Defendant did not feel he had done anything wrong and professed his love for the victim.

An information charged defendant with 30 counts of committing lewd and lascivious acts on a child under the age of 14 in violation of Penal Code section 288, subdivision (a) and an enhancement allegation of substantial sexual conduct pursuant to Penal Code section 1203.066, subdivision (a)(8).[1]

Prior to trial, defense counsel filed a motion in limine, seeking, inter alia, to exclude the incriminating statements defendant gave to law enforcement during an interrogation. Attached to his motion, defense counsel submitted the first three pages of a transcript of the interrogation of defendant by two detectives on March 1, 2012.

The detectives begin by talking with defendant about his arrest and transfer to Shasta County. Defendant explained that he was "picked" up on "Tuesday working" in Antioch, went to Martinez the next morning, then to Sacramento for transfer to Redding. The detective asked defendant why he was in Antioch and defendant explained that he lived there with his father and that his sister and mother lived nearby. Defendant then

---

[1] The information also alleged a use of force allegation (Pen. Code, § 1203.066, subd. (a)(1)) that was later dismissed by the prosecution at the commencement of trial.

2

volunteered a lot more, claiming he went to Antioch because there had been "accusations and threats between [his ex-fiancée] and her neighbors and stuff" but then after he went to Antioch, his ex-fiancée wanted to bring the children to Antioch and did so for a while, all staying with his father. After a few months of defendant and his ex-fiancée fighting and the police being called on a disturbance, defendant's father had had "enough." Defendant drove his ex-fiancée to Anderson along with the children. The detective interrupted and asked about the children, their ages, and the name of his ex-fiancée. Defendant claimed he had been with his ex-fiancée for seven years and that she had "depression problems" and "gets really batty sometimes." The detective interjected and asked about when, how long, and where defendant and his family had lived in Redding. In answering, defendant mentioned "Clay Street." The detective commented that was "rough up on [C]lay" and asked how defendant liked it there. Defendant commented there had been "587 calls fricken what one year," and they all laughed. The detective then asked defendant about his employment. Defendant started explaining and then digressed about his ex-fiancée again, complaining that she had him "falsely arrested" for breaking her phone but then he admitted having done so. Defendant claimed his ex-fiancée needed a "psychiatri[c] evaluation" but had not been diagnosed, used methamphetamine like it was "weed," and that her sister had tried to put her (ex-fiancée) in "lock down." The detective commented that "marijuana" had changed and was more potent and then asked defendant how old he was. The detective asked if defendant or his ex-fiancée had a medical marijuana recommendation and defendant explained that he had been smoking it since he was 15 years of age, that he had nerve damage in his neck, and that he had been unable to get the recommendation due to finances. His ex-fiancée did not have a recommendation and did not use marijuana. The detective asked if the ex-fiancée got angry when defendant used even though for medical reasons, and defendant denied that she did. When asked when defendant had last seen his ex-fiancée and his children, defendant claimed it had been about a week. The detective then stated,

3

"Well listen we want to talk to you today, since you are in custody it seems that you have a probation violation and a warrant. . . . Before I talk to you I want to advise you of your rights. . . ." The transcript of the interview defense counsel submitted with the motion in limine then ends abruptly.

Defense counsel represented that the three pages covered about seven minutes of the interrogation. The complaint charging defendant with the current offenses had been filed on January 31, 2012, and the interrogation occurred in the morning on March 1, 2012, prior to defendant's arraignment later that day.

Defense counsel argued, in relevant part, that defendant's subsequent statements after waiving *Miranda* were "tainted" and inadmissible because the *Miranda* warning did not occur at the beginning of the interview; the detectives knew that they were seeking incriminating responses; defendant did not knowingly and voluntarily waive his rights under *Miranda*; the officers "did everything in their power to make [defendant] comfortable enough to waive" his rights and obtain incriminating statements; defendant's statements were "Fruit of the Poisonous Tree"; and his statements were obtained in violation of his Sixth Amendment right to counsel.

The People responded that defendant's confession was properly obtained and voluntary, representing that after defendant was advised of his rights, he stated that he was familiar with the warnings, confirmed that he understood them, and freely answered questions by both detectives. Citing *Montejo v. Louisiana* (2009) 556 U.S. 778 [173 L.Ed.2d 955] (*Montejo*), the prosecutor argued that defendant waived his right to counsel when he waived his rights under *Miranda*.

At the hearing, the trial court summarized defendant's argument as claiming "there was some sort of softening up of [defendant] by the police officer" prior to giving the warnings pursuant to *Miranda* "that would have in some fashion coerced or induced the admissions made by [defendant]." Defense counsel noted that the interview occurred

4

after the detectives had already spoken to the victim, the victim's mother, and defendant's ex-fiancée and that the intent of the detectives was to "[e]licit an incriminating response." The prosecutor responded that it was a "common practice for officers to talk to a suspect, make them feel comfortable" and that there was "nothing coercive about what either of them said." The prosecutor claimed defendant waived his rights and his confession was admissible.

Based on the transcript pages submitted in support of defendant's motion in limine, the trial court determined that there was no violation of defendant's rights.

## DISCUSSION

### I. Alleged *Miranda* Violation

Defendant first contends that the trial court prejudicially erred in finding that his waiver of his rights pursuant to *Miranda*, *supra*, 384 U.S. 436 [16 L.Ed.2d 694] was voluntary, claiming the court's consideration of the issue of whether the detectives "softened" him up was "perfunctory" in that it did not consider the totality of the circumstances but instead considered only the words spoken by the detectives. Defendant relies primarily upon *People v. Honeycutt* (1977) 20 Cal.3d 150 (*Honeycutt*) in arguing that the detectives' "rapport building" induced his waiver.

"When reviewing a trial court's decision on a motion that a statement was collected in violation of the defendant's rights under *Miranda* . . . , we defer to the trial court's resolution of disputed facts, including the credibility of witnesses, if that resolution is supported by substantial evidence. [Citation.] Considering those facts, as found, together with the undisputed facts, we independently determine whether the challenged statement was obtained in violation of *Miranda*'s rules [citation], that is, whether (assuming the defendant was in custody) the statement was preceded by the now-famous admonition of *Miranda* rights: the defendant has the right to remain silent,

any statement he might make can be used against him, he has the right to the presence of an attorney, and an attorney will be provided at state expense if he cannot afford one. [Citation.] [¶] If a custodial defendant requests counsel, all questioning must cease. [Citation.] Statements made by a custodial defendant in the absence of *Miranda* warnings are inadmissible in the prosecution's case-in-chief." (*People v. Weaver* (2001) 26 Cal.4th 876, 918.) " 'Critically, however, a suspect can waive these rights.' " (*People v. Nelson* (2012) 53 Cal.4th 367, 374.)

"The waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception' [citation], and knowing in the sense that it was 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 219.)

"A criminal conviction may not be founded upon an involuntary confession. [Citation.] The prosecution has the burden of establishing voluntariness by a preponderance of the evidence. Whether a confession was voluntary depends upon the totality of the circumstances. We accept a trial court's factual findings, provided they are supported by substantial evidence, but we independently review the ultimate legal question." (*People v. Scott* (2011) 52 Cal.4th 452, 480.)

In *Honeycutt*, the detective recognized the defendant from police contacts over 10 years. In an interview room at the station, the detective spoke with the defendant about "unrelated past events and former acquaintances and, finally, the [murder] victim." (*Honeycutt*, *supra*, 20 Cal.3d at p. 158.) The detective also "mentioned that the victim had been a suspect in a homicide case and was thought to have homosexual tendencies." (*Ibid.*) In questioning the defendant, the detective testified that he was trying to get the defendant to talk about the murder of the victim and after an unrecorded half-hour conversation, the defendant "indicated that he would talk about the homicide." (*Ibid.*)

6

Three hours after the defendant's arrest, he was advised of his rights pursuant to *Miranda*. (*Honeycutt*, at p. 159.) He waived his rights and then confessed. (*Ibid*.) *Honeycutt* determined that the detective "had, prior to explaining the *Miranda* rights, already succeeded in persuading [the] defendant to waive such rights." (*Ibid*.)

"When the waiver results from a clever softening-up of a defendant through disparagement of the victim and ingratiating conversation, the subsequent decision to waive without a *Miranda* warning must be deemed to be involuntary for the same reason that an incriminating statement made under police interrogation without a *Miranda* warning is deemed to be involuntary." (*Honeycutt*, *supra*, 20 Cal.3d at pp. 160-161.)

Here, the preadvisement conversation was recorded. The detectives appeared to have had no prior relationship with defendant and did not ingratiate themselves with him. Unlike the detective in *Honeycutt*, the detectives here never discussed the victim. One detective asked defendant about his arrest and transfer and why he had been in Antioch. Defendant volunteered more information than had been asked and the detective interrupted to ask defendant about his children, their ages, and the name of defendant's ex-fiancée. Defendant once again volunteered more information than had been asked and added his opinion about his ex-fiancée's mental health. One detective interjected and asked about defendant's living arrangements in Redding. When defendant mentioned a particular street, the detective made a comment about the neighborhood, defendant responded and they all laughed. When one detective asked defendant about his employment, defendant again volunteered much more information than had been asked and started to complain, again, about his ex-fiancée and her use of drugs. After commenting about the potency of marijuana, the detective asked defendant for his age and if either he or his ex-fiancée had a medical marijuana recommendation. Defendant responded and explained his use of marijuana and lack of a recommendation. The detective asked defendant when he had last seen his ex-fiancée and children and after

7

defendant responded, the detective then stated, "Well listen we want to talk to you today, since you are in custody it seems that you have a probation violation and a warrant. . . . Before I talk to you I want to advise you of your rights. . . ."

We conclude that the seven minutes of conversation between the detectives and defendant has no resemblance to the conversation-warning-interrogation sequence condemned in *Honeycutt*. We reject defendant's argument that "rapport building" is "just another way of saying that [the detective] intentionally 'softened up' [defendant], creating a nonthreatening environment where [defendant] was more inclined to waive his *Miranda* rights." We disagree with defendant's claim that the detective engaged him in ingratiating conversation, aligned himself with defendant and against defendant's ex-fiancée, and sanctioned defendant's use of marijuana to "create[] the appearance that he was someone that [defendant] could safely confide in about his personal life." Unlike in *Honeycutt*, the detectives here never used any deceptive statements during the seven minutes of "introductory questions [that] were likely designed to establish a rapport with defendant[] but[,] even if they were successful, this does not establish that defendant's free will was overborne." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1088, citing *Honeycutt*, *supra*, 20 Cal.3d at p. 160.)

Defendant cites other circumstances (his learning disability, lack of formal education, lack of experience with police interrogation), which he argues support a finding of an involuntary waiver. Defendant presented only a transcript of the preadvisement interrogation. The video and a full transcript of the interrogation were not presented to the trial court nor were the now claimed circumstances. Defendant did not mention the circumstances in his motion or at the hearing on his motion. Defendant's argument below focused on being "softened up," which rendered his confession involuntary. Defendant cannot present these circumstances or his new argument for the first time on appeal.

8

Although defense counsel did not present the transcript showing the advisement and waiver of rights, he did not dispute the prosecutor's representation that when advised of his rights, defendant stated that he was familiar with the warnings, confirmed that he understood them, and freely answered questions by both detectives thereafter. Based on what had been presented, the trial court properly concluded that defendant was not softened up and that he voluntarily waived his rights. (See *People v. Sauceda-Contreras*, *supra*, 55 Cal.4th at p. 219.)

## II. Sixth Amendment Right to Counsel

Defendant contends he was interrogated in violation of his Sixth Amendment right to counsel and that the trial court did not decide whether he validly waived his right. We reject this contention.

Before the trial court defendant simply argued that since a complaint charging the current offenses had been filed prior to the police interview (defendant had not been arraigned), his right to counsel attached and an attorney should have been present from the get-go of the interrogation. Although defendant's right to counsel attached once the complaint had been filed (*Montejo*, *supra*, 556 U.S. at pp. 786, 791 [173 L.Ed.2d at pp. 963, 966]; *Massiah v. United States* (1964) 377 U.S. 201, 204-205 [12 L.Ed.2d 246, 249-250]; *People v. Viray* (2005) 134 Cal.App.4th 1186, 1194-1195), "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." (*Montejo*, *supra*, 556 U.S. at pp. 786, 795 [173 L.Ed.2d at pp. 963, 969].)

Defendant submitted three pages of the transcript of his interrogation, which ended just when one detective stated he wanted to advise defendant of his rights. Again, the prosecutor represented that defendant, when advised of his rights, stated that he was

familiar with the warnings, confirmed that he understood them, and freely answered questions by both detectives thereafter. Defendant did not dispute this.**2**

Defendant waived his Sixth Amendment right to counsel when he voluntarily spoke to the detectives after having been given *Miranda* warnings. (See *Montejo*, *supra*, 556 U.S. at p. 786 [173 L.Ed.2d at p. 963] ["Our precedents . . . place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. [Citations.] The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. [Citation.] And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment"].)

We disagree with defendant's claim that the trial court misconstrued the law and the facts. Based on what was presented, the trial court properly concluded that defendant waived his right to counsel, and that there was no Sixth Amendment violation.

---

**2** And rightly so. The rest of the transcript of the interrogation was introduced at trial and reflects that defendant was advised that before the detective talked to him, the detective needed to advise him of his "*Miranda* rights." When asked if defendant had heard of those rights before, defendant responded, "Yeah, I know." The detective then advised defendant that he had the "right to remain silent," that "[a]nything you say may be used against you in court," that "you have the right to talk to [an] attorney before or during any questioning." The detective asked if defendant understood that and defendant responded, "Mm-hm." The detective then stated that if defendant could not afford an attorney, one would be "appointed to represent you before any questioning." Defendant then answered the detectives' questions about the victim and the charged offenses. Defendant implicitly waived his rights, including his right to an attorney, by willingly answering questions after acknowledging that he understood his rights. (*People v. Nelson*, *supra*, 53 Cal.4th at p. 375.) There was no Sixth Amendment violation.

### III.  Corrections to Abstract of Judgment

We note an error in preparation of the first amended abstract of judgment.  The abstract consists of four pages in order to accommodate the 30 convictions.  While the entries are correct for each offense, not all of the totals are correct.  The court imposed 16 years for counts 1 through 6, 24 years for counts 7 through 18, and concurrent terms for counts 19 through 30.  On the first page of the abstract, it correctly shows at item No. 8 that the court imposed 16 years for counts 1 through 6 but then incorrectly shows at item No. 6 that the court imposed 78 years for the remaining counts on the attached pages.  Page 3 of the abstract correctly reflects that the trial court imposed 24 years for counts 7 through 18 and concurrent terms for counts 19 through 21.  Page four of the abstract incorrectly reflects that the trial court imposed a total of 54 years for counts 21 through 30 when the court imposed concurrent terms.  We will order the trial court to prepare a corrected abstract accordingly.

### DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment to reflect the aggregate 40-year sentence, and to forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is affirmed.


                                                                    BUTZ                    , J.


We concur:



        NICHOLSON        , Acting P. J.



        ROBIE            , J.


11